CLEVELAND v. CITY COUNCIL OF SPARTANBURG.

1. MUNICIPAL BONDS—CONSTRUCTION OF STATUTES.—An act authorizing a municipal election for purpose of issuing bonds, approved before Constitution of 1895, containing provisions as to petitions, elections, &c., contrary to such provisions in the Constitution of 1895, is not thereby repealed, but shonld be read as if amended by these provisions.

2. IBID.—INTEREST.—Municipal authorities, under 22 Stat., 88, may issue bonds at a less rate of interest than that prescribed by the authorizing act, enacted prior to 1896, and by the voters and proceedings.

3. IBID.—Petitions of freeholders for an election to authorize issuance of bonds, need not recite that the subscribers are a majority of the freeholders.

4. PUBLICATION OF NOTICE.—The provision of 20 Stat., 976, requiring "at least three weeks notice by advertisement, &c.," is complied with by a single publication of such notice three weeks before the election.

5. ELECTIONS—ELECTORS.—THE PRESUMPTION is that officers of an election only permit those to vote who are qualified electors, and a statement to that effect is not necessary in the managers' returns.

6. MUNICIPAL BONDS.—ORDINANCES and proceedings under which municipal bonds are issued need not show upon their face that the issue would not exceed the constitutional limit.

7. IBID.—IBID.—INTEREST—SINKING FUND.—Nor need such ordinances provide for levying taxes to pay the interest, and for a sinking fund.

Petition in the original jurisdiction of this Court by Henry Cleveland *v.* Arch. B. Calvert and others, constituting the city council of Spartanburg, to enjoin respondents from issuing $50,000 of municipal bonds.

*Mr. Ralph K. Karson,* for petitioners.

*Messrs. Bomar & Simpson,* contra.

January 3, 1899.   The opinion of the Court was delivered by

MR. JUSTICE JONES.   This is an application in the original jurisdiction of this Court, for an injunction to restrain the

city council of Spartanburg from issuing $50,000 of bonds
for sewerage purposes. The city council claim authority
to issue said bonds under a special Act for that purpose, ap-
proved December 24th, 1890, 20 Stat., 976, entitled "An
act to authorize the city council of Spartanburg to ordain
the necessary ordinances for the establishment, construction
and maintenance of a system of sewerage in the city of
Spartanburg and issue bonds for the purpose of the estab-
lishment, construction and maintenance of such a system."
By this act the city council were authorized to issue
$50,000 of six per cent. coupon bonds, or so much thereof
as in their judgment may be necessary, provided a majority
of the qualified electors of said city shall vote in favor of
such issue at an election held for that purpose, upon the pe-
tition of one-third of the real estate owners of said city.

1. Petitioner contends that this act is void, and all pro-
ceedings thereunder illegal, because the same was repealed
and nullified by sec. 13, art. II., of the Constitution of 1895,
and laws subsequently passed in pursuance thereof, pre-
scribing different qualifications for electors than those
which existed at the time of the passage of the said special
act, and prescribing, as a condition precedent to the
holding of the election for the purpose of issuing
bonds, a petition from a majority of the freeholders
of said city, as shown by its tax books. It appears from the
return of respondents to which petitioner demurs, and
thereby admits to be true, that on August 23d, 1897, a peti-
tion for an election on the question of issuing such bonds
was filed with the city council, and that it was ascertained
and determined by the city council, that the petition was
signed by more than a majority of the freeholders of the
city of Spartanburg. It further appears that a large major-
ity of those, who voted at the election, voted in favor of is-
suing said bonds, and that those who voted were qualified
electors under the Constitution of 1895. The effect of the
new Constitution, and acts pursuant thereto, is not to
wholly nullify the said special act, but merely to nullify so

much of said act as is inconsistent with the new Constitution, or rather the special act must be read as if amended so as to prescribe for electors thereunder the qualifications required under the new Constitution, and to require a petition by a majority of the freeholders, instead of one-third.  As these conditions were admittedly complied with, the proceedings were not void.  *McWhirter* v. *Newberry County,* 47 S. C., 418.

2. It appears that the city council contemplates the issue of five per cent. instead of six per cent. coupon bonds.  Petitioner claims that the city council have no power to so do, because the petition and other proceedings preliminary to the election upon the question of issuing bonds, and of proceedings in relation thereto, contemplated and provided for six per cent. only.  The act of 1890 permitted and authorized the issue of $50,000 of six per cent. coupon bonds, or so much thereof as in their judgment may be necessary.  The act of March 9th, 1896, 22 Stat., 88, entitled "An act to authorize special elections in any incorporate city or town of this State for the purpose of issuing bonds for corporate purposes," in section 2 provides that, "should a majority of those voting in said election vote in favor of said bond issue, then the municipal authorities of said city or town shall be authorized to issue said bonds, which shall be of such denomination, and run for such length of time, and bear such rate of interest, not exceeding seven per centum per annum, as the said municipal authorities shall prescribe."  It is, therefore, clearly within the powers of the city council, if it is found, in their judgment, advisable so to do, to issue bonds bearing a rate of interest less than that permitted by the legislation on the subject, and authorized by the vote of the electors. · It would seem that petitioner as well as all other taxpayers of the city would be benefited rather than injured by the proposed act of the city council.

3. Petitioner's contention that the proceedings are invalid, because the petitions presented to the city council did

not set forth, upon their face, that they were signed by a majority of the freeholders of the said city, is not. tenable. It is not necessary that the petition shall recite that it is signed by a majority of the freeholders. That fact can not be determined by the mere recital of the petition, but must be ascertained by reference to the tax books.

4. It is contended, as a ground for injunction, that the election held on the question of issuing said bonds was illegal, because the notice of the election was not given as required by the act. The language of the act is, "the city council of said city are hereby required to give at least three weeks notice; by advertisement in one or more of the papers of said city, of the time and place of an election upon said issue, and of the names of managers appointed by them to conduct the election." It appears that notice of the time and place of election, and of the names of managers, was published in the Spartanburg Herald, in its daily editions, on August 25th and 26th, and on September 14th, and in the semi-weekly issue of August 27th, 1897. The time fixed for the election was September 15th, 1897. Excluding August 25th, and including September 15th, under the rule prescribed in sec. 421 of the Code of Procedure, the first publication appeared twenty-one days, or three weeks before the election. Is this a compliance with the requirement of the statute, to give "at least three weeks notice by advertisement, &c?" We are of opinion that it is. It will be observed that the words used to describe the time of publication are not like those used in reference to the publication of summons against a non-resident, as in sec. 156 of the Code, where the language is, "not less than once a week for six weeks," nor like those used in reference to the sale of real estate under execution, &c., as in sec. 2543, Rev. Stat., where the language is, "once a week for at least three weeks," which could only be met by a publication at least once a week for the specified time. The statute in question does not require a publication "once a

week," nor does it require advertisement *for* three weeks. Since it merely requires notice to be advertised at least three weeks before the election, a single publication appearing three weeks previous is a compliance.   To hold otherwise would be to interpolate words which the legislature did not see fit to employ, and which, in reference to other matters, it is accustomed to employ, when the intention is to require publication at least once a week.

5. Petitioner further alleges that the election was invalid, because it did not appear, affirmatively, upon the returns of such election that the persons who were allowed to vote thereat possessed the constitutional qualifications of electors, to wit, that they were at a proper age and had paid all their taxes.   The point is not well taken.   The presumption is that the officers in charge of the election did their duty, and that only those were allowed to vote who were entitled to vote, and a recital to that effect by the managers in their return is not necessary.   It appears by the admitted facts in this case that those who voted were qualified voters.

6. It is alleged that the ordinances and other proceedings, under which said issue of bonds is proposed to be made, were irregular and insufficient, for not showing upon their face that the issue of said bonds will not exceed the constitutional limit for bonded indebtedness for said city.   It is not contended that the proposed issue of bonds would, in fact, exceed the constitutional limit—indeed, the facts set out in respondent's return, admitted to be true, showing the assessed value of the taxable property of the city and county of Spartanburg, and the bonded debt already existing, show clearly that the proposed issue would not exceed the constitutional limit.   The point here made is simply that the fact that the proposed issue is not excessive should appear affirmatively in the ordinance and other proceedings in reference to the proposed issue.   Recitals in the ordinance or elsewhere to the effect that the issue does not exceed the constitutional limit, not being required, are not

necessary. Such a recital would be wholly unavailing in determining the question of excessive issue, unless the officers making the recital are, by some valid law, charged with the duty of ascertaining and determining that fact. The question of excessive issue can be determined only by a comparison of the existing and proposed bonded debt with the record showing the assessed value of the taxable property. *Dixon County* v. *Field,* 111 U. S., 95. *Sutliff* v. *Lake County Commissioners,* 147 U. S., 236; *State* v. *Cornwell,* 40 S. C., 30.

7. We do not think that the fact, even conceding it to be a fact, that the ordinance providing for the issue of the bonds does not definitely provide for levying taxes to pay the interest thereon and to provide a sinking fund for the payment of the principal, is any reason for restraining the issue of the bonds, since all the provisions may be hereafter made for such purposes.

Finding nothing in the record to justify the granting of the injunction prayed for, the application therefor is refused and dismissed.