[Civ. No. 463.    Second Appellate District.—August 31, 1907.]

## CITY OF SANTA BARBARA, Petitioner, v. ALFRED DAVIS, City Clerk, Respondent.

MUNICIPAL BONDS—ELECTION UNDER GENERAL LAW—ORDINANCES—ILLEGAL DENOMINATION — SURPLUSAGE — REPEAL — PROPER ORDINANCE—MANDAMUS.—Where the freeholders' charter of the city of Santa Barbara provided for a municipal election for bonded indebtedness to be issued in pursuance of the general law of the state, which provides for election under an ordinance which is not required to specify the denomination of the bonds, and authorizes the municipality by subsequent ordinance to fix the denomination of the bonds, not exceeding $1,000 each, and a number equal to the proposed indebtedness, where the ordinance calling the election provides for a bonded indebtedness for $50,000, at a specified rate of interest, and for forty bonds of $1,250 each, payable one in each year, the latter provision is surplusage, and a subsequent illegal ordinance providing for the same bonds was properly repealed, and under a subsequent proper ordinance calling for eighty bonds of $625 each, payable two in each year, *mandamus* will lie to compel the city clerk to issue them, and to affix the seal of the city thereto.

PETITION for writ of mandate to the city clerk of the city of Santa Barbara.

The facts are stated in the opinion of the court.

Henley C. Booth, for Petitioner.

Alfred Davis, Respondent *in pro. per.*

TAGGART, J.—This is an application for a writ of mandate to compel the respondent, as city clerk of the city of Santa Barbara, to certify and cause to be published an ordinance of that city, and to sign his name and affix the corporate seal of the city to certain improvement bonds authorized by the said ordinance.

The city of Santa Barbara is organized under a freeholders' charter, which provides that propositions to incur bonded indebtedness shall be submitted to vote in accordance with the

general laws of the state.   Acting under the provisions of
the act entitled ''An Act authorizing the incurring of indebt-
edness by cities, towns, and municipal corporations for mu-
nicipal improvements, and regulating the acquisition, con-
struction or completion thereof,'' passed in 1901, commonly
designated the ''Municipal Improvement Act of 1901'' (Stats.
1901, p. 29), as the same was amended in 1907 (Stats. 1907,
p. 609), the mayor and council of said city, on the twenty-
first day of May, 1907, passed a resolution determining that
the public interest and necessity required the construction of
a certain public highway known as the ''East Boulevard''
and that the cost of the construction thereof ($50,000) was
too great to be paid out of the ordinary annual income and
revenue of said municipality.   At a subsequent regular meet-
ing of said council, on June 6, 1907, an ordinance (No. 576)
of said city was passed and finally adopted and approved,
and thereafter duly published, calling a special election, and
submitting to the qualified voters of said city the proposition
of incurring the indebtedness mentioned in said resolution
and issuing the bonds of the city therefor.   The ordinance
contained in addition to those recitals required by law, among
others, the following: ''Said bonds shall issue negotiable in
form and of the character known as serials, and shall be
numbered consecutively from 1 to 40, both numbers inclu-
sive, and shall be of the sum or denomination of $1,250 each,
. . . one-fortieth of the whole amount of said indebtedness
of $50,000—to wit, $1,250—shall be paid each and every
year,'' etc.   The said election was held, the returns thereof
canvassed and the said proposition declared carried by more
than the required two-thirds vote.   Thereupon the council of
said city by an ordinance (No. 581) regularly passed and
approved, determined the character, denomination, and other
matters in relation to said bonds required by section 5 of
said municipal improvement act, in accordance therewith, ex-
cept the sum or denomination of said bonds was fixed at
$1,250—whereas said act provides that no bonds shall be of
a greater denomination than $1,000.   Notice of sale of said
bonds was published, but none were sold and the sale thereof
has been abandoned.

It being called to the attention of the mayor and council
of said city that the denomination of said bonds as estab-

lished by ordinance No. 581 was in excess of the maximum provided by the act, an ordinance of said city (No. 587) was regularly passed, adopted and approved for the purpose of correcting this, and fixing the denomination (as that term is used in the statute) of said bonds in accordance with the act. By said ordinance No. 587 this was fixed at $625, and the number thereof at eighty, and they were made payable two each year. Said ordinance No. 581 was expressly repealed thereby.

It is ordinance No. 587 which respondent refuses to certify and publish, and the bonds provided by that ordinance to which he refuses to attach his name and the corporate seal of said city, and in his return to the order to show cause, places his refusal on the ground that the election having been held pursuant to a notice stating the denomination of said bonds to be $1,250, it is not competent for the city to issue bonds of another denomination.

Section 2 of the municipal improvement act contains the provisions therein for the calling of the special election, and, so far as material here, provides: ''The ordinance calling such election shall recite the objects and purposes for which the indebtedness is proposed to be incurred, the estimated cost of the public improvements, the amount of the principal of the indebtedness to be incurred therefor, and the rate of interest to be paid on said indebtedness, and in all particulars not recited in said ordinance such election shall be held as provided by law for holding municipal elections in such municipality.'' Section 80 of the charter of the city of Santa Barbara is the section directly affecting the matter here under consideration and the terms of the ordinance and manner of holding the election were in strict compliance with its provisions.

Section 5 of the municipal improvement act provides: ''The bonds shall be issued in such denomination as the legislative branch of the municipality may determine, except that no bond shall be of a less denomination than one hundred dollars, nor of a greater denomination than one thousand dollars.''

If the clause upon which respondent's refusal is predicated were eliminated from ordinance No. 576, it would still contain all that is required by law or the charter to be recited

or stated in the notice of election. It is also clear that within the limits prescribed by the act the denomination of the bonds rests in the discretion of the council of the city, and that this discretion need not be exercised until after the authority to incur the indebtedness and issue the bonds has been conferred by vote of the qualified electors at the special election. The presence of the clause in the ordinance being unnecessary and unauthorized, it is clearly surplusage, and does not operate to limit or affect the exercise of the discretion to fix the denomination of the bonds conferred upon the council by section 5 of the act. It cannot be said that the question as to the denomination of the bonds was submitted to the voters at the special election, as this is not made a part of the proposition printed on the ballot, but had such an attempt been made it would have been an unauthorized delegation of legislative discretion expressly vested by law in the city council.

Petitioner's brief suggests another question not expressly presented by respondent, as a justification of his refusal to act. Did the city council exhaust its power to determine the denomination of the bonds by its exercise in passing ordinance No. 581 whereby the sum of $1,250 was determined in accordance with the notice of election? We think not. No bonds were sold under ordinance No. 581, and it is stipulated that such sale has been abandoned, and No. 581 has been expressly repealed by ordinance No. 587. No. 581 provides for forty bonds of $1,250 each, payable one each year, and No. 587 for eighty bonds of $625 each, payable two each year. Otherwise the provisions of the two ordinances are substantially the same. There is no difference that can or will in any manner affect the taxpayer to his disadvantage.

Both the questions here presented appear to have been practically determined by the supreme court in *Derby* v. *City of Modesto*, 104 Cal. 515, [38 Pac. 900], and this case is cited and the same principle declared in *Law* v. *San Francisco*, 144 Cal. 393, [77 Pac. 1014].

Independent of these decisions, we think it clearly within the power of the council of a city to repeal any ordinance passed by it which does not affect the contractual relation of the city, and we see no reason for an exception because the subject matter of the ordinance is the determination of

the denomination of a municipal bond, unless the attempt at repeal should be delayed until after the rights of third parties or taxpayers might be materially affected thereby. Such is not the case here.

Ordinance 587 was regularly passed and is a valid ordinance of the city, and the bonds provided thereby are based upon the election of July 10th, and are valid and duly authorized. Ordinance No. 581 is repealed and of no effect.

It is therefore ordered that the writ of mandate issue as prayed for.

Allen, P. J., and Shaw, J., concurred.