[Civ. No. 1237. Second Appellate District.—January 17, 1913.]

CITY OF OXNARD (a Municipal Corporation), Petitioner, v. G. R. BELLAH, as City Clerk of Said City of Oxnard, Respondent.

MUNICIPAL CORPORATION — BONDED DEBT — SEPARATE ORDINANCES—WATER AND LIGHTING SYSTEMS—SINGLE ELECTION—PROPER BALLOTS—VALID PASSAGE—REFUSAL OF CLERK TO COUNTERSIGN BONDS —MANDAMUS.—Where a municipal corporation made proper estimates for a separate water system and light system, and passed separate ordinances fixing the amount of bonded indebtedness to be incurred in the acquisition of each system, both of which propositions were submitted to the voters at an election held on the same date pursuant to the laws of the state applicable thereto, and a valid election was held thereunder, in which, in the use of proper ballots, two-thirds of the voters voted for the issuance of both kinds of bonds, but the city clerk improperly refused to countersign the same, *mandamus* will lie to compel him to countersign the bonds so voted for.

ID.—INDEBTEDNESS PROPERLY INCURRED—NUMBER OF ORDINANCES IMMATERIAL.—The election established a subsisting indebtedness prop-

21 Cal. App.—3

erly incurred, and the statute provides for the incurring of indebtedness for more than one object at the same election. The fact that the ordinances providing for the same election were passed at different dates, and that one ordinance might have been passed for the whole bonded indebtedness, for different purposes, is immaterial in determining the validity of the bonded indebtedness incurred.

ID.—SUFFICIENT COMPLIANCE WITH STATUTE AS TO MANNER OF ELECTION.—There was a sufficient compliance with the statute providing that the ordinance calling the election shall fix the manner of voting at the election, where it provided that the ballots should contain the proposition relative to incurring the indebtedness, and that connected therewith shall be printed the words "yes and "no." This is the manner required by the general laws of the state for the submission of public questions to the electors, thus clearly fixing the manner of voting for or against the propositions.

ID.—RECITAL IN ORDINANCES AS TO ESTIMATED COST.—The recital in the ordinances as to the estimated cost is sufficient proof of the estimated cost upon the application for the writ of *mandamus*, where the affidavit therefor discloses without contradiction that the ordinance was regularly passed.

ID.—CONSTRUCTION OF STATUTE AS TO AMOUNT OF BONDS UNDER ESTIMATE.—It is held that the statute is not to be construed as making it obligatory upon the trustees to issue bonds for the full amount of the estimate. They may be issued in a less amount, if in the opinion of the board, such amount only is necessary for the accomplishment of the purpose.

APPLICATION for a Writ of Mandate to the City Clerk of the City of Oxnard.

The facts are stated in the opinion of the court.

Charles F. Blackstock, and Merle J. Rogers, for Petitioner.

G. R. Bellah, City Clerk *in pro. per.*, and I. W. Stewart and Hiatt & Selby, *Amici Curiae*, for Respondent.

THE COURT.—In *mandamus.* The alternative writ was issued by this court upon the filing of an affidavit setting forth that the petitioner, a municipal corporation, through its board of trustees, employed certain engineers to assist in making estimates of the cost of a proposed municipal water system for the city; that after consultation with such engineers the board of trustees made an estimate that the cost

of such proposed water system would amount to $107,513.76; that thereafter the board, by an ordinance adopted February 6, 1912, determined and declared that the public interest and necessity demanded the acquisition, construction, and completion of such improvement; that the estimated cost of the same is $107,513.76; that such cost is too great to be paid out of the ordinary annual income and revenue of said city, and that it is the intention of the board of trustees of said city to call a special election for the purpose of submitting to the qualified electors of the city of Oxnard the proposition of incurring a debt in the sum of one hundred thousand dollars for. the purpose of acquiring, constructing, and completing such municipal waterworks, which ordinance was duly published.  Thereafter, the board of trustees by resolution called a special election to be held on the fifth day of April, 1912, for the purpose of incurring on the part of said city of Oxnard a debt for the purposes set forth in the ordinance above referred to.  By section 2 of said resolution it was stated that said proposition to be voted on at said election is the following, to wit: The issuing of bonds of the city of Oxnard in the sum of one hundred thousand dollars in accordance with the laws of the state; and further providing for the number and denomination of the bonds and rate of interest they were to bear, and that such interest should be payable semi-annually on the first day of June and the first day of December of each year.  On the thirteenth day of February, 1912, the board of trustees passed another and further ordinance determining that the public interest and necessity demanded the acquisition by said city of a certain other municipal improvement, to wit: the acquisition, construction, and completion of a municipal lighting system, the estimated cost of which is $31,607.98, which ordinance was duly passed, signed and published; and an election was to be held in said city of Oxnard on the fifth day of April for the purpose of voting thereat upon the proposition of incurring a debt upon the part of said city for the purpose set forth in said ordinance.  By section 2 of said ordinance it was provided that bonds should be issued in the sum of thirty thousand dollars, giving the denomination thereof, the rate of interest and when payable.  The substantial form of the bond in each instance was set forth in the ordinance.

The ordinance in relation to the municipal street lighting system called for an election to be held on the fifth day of April, and provided for the manner in which the votes should be cast; and provided further that said ballots with respect to said public improvement should contain the following proposition to be voted on by the voters:

| "Shall bonds of the city of Oxnard in the sum of $30,000 be issued for the purpose of the acquisition, construction and completion by said city of Oxnard of a certain municipal improvement, to wit: A Municipal Street Lighting System, * * * ? | · | |
| | Yes | |
| | No." | |

The proposition with reference to the vote upon the municipal waterworks system was in practically the same form. The ordinances further provided that the ballots should be in all respects in accordance with the general election laws of the state of California, in so far as the same apply to a municipal corporation, and that the special election shall be conducted in accordance with the election laws of the state of California, in so far as applicable to municipal corporations. The election officers were duly selected and named, places for voting designated and notice of said election given. The resolutions with reference to the two municipal enterprises as to the election, the bonds and matters connected therewith were identical. The election so called was regularly held and both propositions were submitted to the voters upon the same day and the same ballot. This pursuant to resolutions of the board of trustees; and at said election more than two-thirds of the electors voting voted in favor of the issuance of the bonds of both kinds, and a canvass of the vote was regularly held and such result declared. Thereafter, the board of trustees duly adopted an ordinance providing for the issuance of the bonds for said improvements, directing the signing thereof by its officials, the sale thereof, and the publication of the proceeds for the purposes expressed in the general intention. That said city, through its boards, caused to be prepared and presented said bonds, signed by the president and treasurer of said city, as by the ordinances provided, and presented the same to said respondent Bellah, the clerk of said city, with a demand that he countersign said bonds, as by the ordinances theretofore required, which the said clerk fails, declines and refuses to do. It is further made

to appear that the bonded indebtedness is within the limits established for the creation of municipal indebtedness, and provision has been made for the proper sinking fund, and the levying of taxes for the payment of said bonds. A writ of mandate is asked, directing the city clerk to countersign said bonds that the same may be utilized for the public purposes intended.

Respondent Bellah justifies his action in refusing to countersign said bonds upon the following grounds: 1. That the proposition of incurring a debt has not been submitted to the voters; 2. That two elections were called and only one was held; 3. That the ordinance calling the election did not fix the manner of voting for or against the debt; 4. That the ballot prescribed by the ordinance was not used at the election; 5. That notice was not given as required by section 4459 of the Political Code, and 6. That the amount of the bonds differed from the estimate upon which the necessity for the incurring of an indebtedness was based.

We see no merit in the contention that the incurring of a debt has not been submitted to the voters. It is clear that the authority to issue bonds evidencing a debt was submitted and that the voters directed the issuance thereof, the effect of which would be to create and establish an indebtedness; and it should follow that a proposition to issue bonds evidencing a new and independent indebtedness is a proposition to incur an indebtedness, and comes within the purview of the statute which provides that the proposition of incurring a debt for the purposes set forth in said resolution, and no question other than the incurring of an indebtedness for the purpose, shall be submitted. There is presented no question with relation to the renewal of an existing indebtedness by new evidence, which question was before the court in the case of *City of Los Angeles* v. *Teed,* 112 Cal. 327, [44 Pac. 580]. The statute provides that propositions of incuring indebtedness for more than one object or purpose may be submitted at the same election. We think this statute properly construed permits the submission of various propositions involving the creation of indebtedness, even though the ordinances in relation thereto be passed at different times, and that the election is not invalidated because of separate ordinances calling the election, even though a single ordi-

nance calling such election might embody all of the propositions to be submitted. We are unable to conceive how any misunderstanding could arise, through the call for election by separate ordinances. The proceedings in this case calling the election seem to have been substantially within the statute. The statute provides that the ordinance calling an election shall fix the manner of voting for or against the proposition submitted. The ordinances under consideration we think did provide such manner. They provided that the ballots should contain the proposition relative to incurring the indebtedness, and that connected therewith should be printed the words "yes" and "no." This is the manner and form provided by the general election laws of the state for the submission of public questions to the electors, and, to our minds, clearly fixing the manner of voting for or against the propositions. There is nothing in the record indicating that there was any material variance between the form of ballot prescribed by the ordinances and the one actually used. The affidavit discloses without contradiction that the ordinances were duly and regularly passed. This contemplates a due performance of all acts in the mode and manner provided by law. The ordinances declared in apt language what was the estimated cost of each improvement. This must be accepted as a declaration and finding that such estimates had been previously made. The law provides no particular manner of fixing estimates. (*Clark* v. *Los Angeles,* 160 Cal. 30, [116 Pac. 722].) We do not construe the statute as making it obligatory upon the trustees to issue bonds for the full amount of the estimate. In our opinion, bonds may be issued for a lesser amount, if in the opinion of the board such amount only is necessary for the accomplishment of the purpose. Finally, it is claimed by respondent that the bonds differed from those described in the ordinances. This difference is only in relation to the time when the bonds and interest thereon are made payable, a matter not material or necessary to be included in the call for election, or other preliminary ordinances. It is a matter for determination by the board of trustees after authority to issue is given. (*City of Santa Barbara* v. *Davis,* 6 Cal. App. 342, [92 Pac. 308].)

As a summary, then, we feel constrained to hold that the matters and facts alleged and established by the affidavit and record evidence such a compliance with the law in all material respects as to justify us in holding that the validity of the bonds is established, and that respondent's refusal to countersign was an omission to perform a plain ministerial duty devolving upon him by law.

The alternative writ of mandate is made peremptory.