[S. F. No. 12452.   In Bank.—June 17, 1927.]

TOWN OF MARTINEZ (a Municipal Corporation), Petitioner, v. RAYMOND B. JOHNSON, as Town Clerk of the Town of Martinez, Respondent.

[1] Municipal Corporations—Issuance of Bonds—Municipal Bond Act—Rate of Interest.—The board of trustees of a municipal corporation has power to direct by resolution the issuance of bonds bearing five per cent interest, notwithstanding the ordinance calling the election to vote upon their issuance provided that they should bear interest at the rate of six per cent.

[2] Id.—Power of Directors—Discretion.—The Municipal Bond Act (Stats. 1901, p. 27) and amendments thereto (Deering's General Laws 1923, p. 1964) clothe the board of trustees of a municipality with a certain discretion in fixing the interest that bonds shall bear, provided the interest does not exceed that recited in the ordinance calling the election.

[3] Id.—Construction of Statute—Intent of Legislature.—The intent of the legislature in the enactment of the Municipal Bond Act must be determined from the terms of the statute at the time of its enactment and not by any amendments subsequent to its adoption.

(1) 28 Cyc., p. 1592, n. 99.   (2) 28 Cyc., p. 1592, n. 99.   (3) 28 Cyc., p. 1576, n. 53.

APPLICATION for a Writ of Mandate to compel a town clerk to sign certain municipal improvement bonds. Writ granted.

The facts are stated in the opinion of the court.

A. F. Bray, Town Attorney, for Petitioner.

Goodfellow, Eells, Moore & Orrick for Respondent.

CURTIS, J.—This application for a writ of mandate was presented to this court upon an agreed statement of facts. The petitioner makes the application under the provisions of sections 1138 to 1140, inclusive, of the Code of Civil Procedure, which relate to the submission of controversies which might be the subject of a civil action to courts which would have jurisdiction of such action upon an agreed state-

ment of facts. The petitioner herein, the Town of Martinez, a municipal corporation, seeks to compel the respondent as town clerk of said Town of Martinez to countersign certain municipal bonds which had been directed to be issued by resolution of the board of trustees of said town of date February 23, 1927. Previous to the passage of said last-named resolution, and on the seventh day of September, 1926, said board of trustees had, by ordinance duly enacted, called a special election to be held in said town for the purpose of submitting to the qualified electors thereof the proposition of incurring a bonded indebtedness of seventy-five thousand dollars for the purpose of acquiring, constructing, and completing certain municipal improvements described in the ordinance calling said election. Thereafter said election was held in all respects as required by law with the result that more than two-thirds of the qualified electors of said town voting at said election voted in favor of the proposition to incur said bonded indebtedness and to issue said bonds in the sum of seventy-five thousand dollars. In the ordinance calling said election it was provided "that the rate of interest to be paid on said indebtedness is six per cent per annum, payable semi-annually." In the resolution of February 23, 1927, directing the issuance of said bonds it is provided that "All of said bonds shall bear interest from their date until paid at the rate of five per cent per annum, payable semi-annually." It will thus be seen that while the ordinance calling said election provided for a six per cent bond, the resolution directing the issuance of the bonds called for a five per cent bond. On account of this variance between the ordinance and the resolution as to the rate of interest the bonds should bear the town clerk has refused to countersign the bonds prepared in pursuance of and in conformity with the resolution. [1] The sole question involved in this controversy is the power of the board of trustees to direct by resolution the issuance of bonds bearing five per cent interest when the ordinance calling the election to vote upon their issuance provided that they should bear interest at six per cent.

The proceedings to incur said bonded indebtedness were held under the provisions of the Municipal Bond Act (Stats. 1901, p. 27) and amendments thereto (Deering's General

Laws 1923, p. 1964). In section 2 of said act it is provided:

" . . . The ordinance calling such election shall recite the objects and purposes for which the indebtedness is proposed to be incurred, the estimated cost of the proposed public improvements, the amount of the principal of the indebtedness to be incurred therefor, and the rate of interest to be paid on said indebtedness, and shall fix the date on which such election will be held, the manner of holding such election and the voting for or against incurring such indebtedness, and in all particulars not recited in such ordinance, such election shall be held as provided by law for holding municipal elections in such municipality, provided, however, that if the rate of interest to be paid on such indebtedness shall not exceed four and one-half per centum per annum payable semi-annually, the rate of interest need not be recited in such ordinance, but in its discretion the said legislative branch may recite in such ordinance a maximum rate of interest to be paid on such indebtedness, not exceeding six per centum per annum payable semi-annually, which rate when so recited, shall not be exceeded in the issuance of bonds for such indebtedness."

All that part of said section after the words "provided, however," were incorporated in the statute by an amendment thereto adopted in 1917 (Stats. 1917, p. 79). As originally enacted that portion of said section read as follows: " . . . The ordinance calling such election shall recite the objects and purposes for which the indebtedness is proposed to be incurred, the estimated cost of the proposed public improvements, the amount of the principal of the indebtedness to be incurred therefor, and the rate of interest to be paid on said indebtedness, and shall fix the date on which such election will be held, the manner of holding such election and the voting for or against incurring such indebtedness, and in all particulars not recited in such ordinance, such election shall be held as provided by law for holding municipal elections in such municipality." Section 5 of said statute, as originally enacted and which has never been amended, provides for the form of the bonds and their manner of issuance and directs that "The bonds shall be issued in such denominations as the legislative body of the municipality may determine, except that no bonds shall

be of a less denomination than one hundred dollars, nor of a greater denomination than one thousand dollars, and shall be payable on the day and at the place or places fixed in such bonds, and with interest at the rate specified in the bonds, which rate shall not be in excess of six per cent per annum, and shall be payable semi-annually." It will be observed that there is nothing to be found in this section of the act, and this is the only section in the act dealing with this subject, directing that the bond shall bear the rate of interest specified in the ordinance, the only direction being that the rate of interest shall be "the rate specified in the bonds, which rate shall not be in excess of six per cent per annum, and shall be payable semi-annually." In construing these provisions of the act this court has held that the rate of interest provided in the bond cannot exceed that recited in the ordinance calling the election (*Peery* v. *City of Los Angeles,* 187 Cal. 753 [19 A. L. R. 1044, 203 Pac. 992]). A similar ruling was made by this court in construing a like act of the legislature passed in 1889, authorizing the incurring of bonded indebtedness for the construction of municipal improvements (Stats. 1889, p. 399, as amended, Stats. 1891, p. 49; *Skinner* v. *Santa Rosa,* 107 Cal. 464 [29 L. R. A. 512, 40 Pac. 742]). In *O'Farrell* v. *County of Sonoma,* 189 Cal. 343 [208 Pac. 117], it was held that the board of supervisors of a county could not use revenue derived from the sale of bonds for highway purposes except in constructing the highways described in the ordinance calling the bond election. The reasons advanced by this court in *Peery* v. *City of Los Angeles, supra,* for holding that the rate of interest provided in the bonds could not exceed that recited in the ordinance were that after securing the assent of the electors of the municipality to the issuance of bonds at a definite rate of interest it would be a fraud upon said electors for the board thereafter to issue a bond bearing a greater rate of interest and thereby increase the burden of taxation beyond that to which the electors had given their assent. This argument, however, cannot be made against the issuance of bonds which bear a less rate of interest than that recited in the ordinance, as by the issuance of such bonds the burden upon the taxpayer would be lightened rather than increased.

It would have been a simple matter, had the legislature desired to limit the power of the governing body of the municipality in this respect, to have inserted such a provision in the statute. It did provide for certain limitations as to the rate of interest the bonds should bear—that is not exceeding six per cent per annum payable semi-annually. It can well be claimed that this studied effort on the part of the legislature to avoid providing that the bonds should bear the same rate of interest as recited in the ordinance and in expressly specifying the maximum rate of interest the bonds might bear, evinces an intention to confer upon the legislative body a discretion in fixing the rate of interest within the limitations provided. This discretion cannot be exercised so as to cast upon the taxpayers of the municipality a burden greater than that provided for in the ordinance calling the election, but we can see no good reason why it could not be resorted to in an attempt to lessen such burden. The only possible argument that has been presented against such a construction is that the board of trustees or other governing body of the municipality after reciting in the ordinance a definite rate of interest and after the electors of such municipality had voted in favor of the bond issue upon the assumption that the bonds when issued would bear said rate, may thereafter fix a less rate of interest and one so low that would render the bonds unsalable, and thereby defeat the whole scheme of public improvements which had been approved by the electors of the municipality. In answering this argument we would repeat that the legislature could have provided against such an exigency by a simple statement in the statute to that effect, and the fact that it did not include any such provision in the statute may well be taken as indicative of the belief on the part of the legislature that such a contingency would seldom if ever arise. There are advantages in favor of giving such discretion to municipal authorities. A very substantial one is shown by the facts in the present proceeding, that of obtaining the funds for municipal improvements at five per cent instead of six per cent. The legislature may well have considered that the advantages to be gained in investing the municipal authorities with this discretion greatly outweighed any possible disadvantages which might arise in withholding said authority.

201 Cal.—26

The only case directly in point to which our attention has been called is the case of *Omaha National Bank* v. *City of Omaha,* 15 Neb. 333 [18 N. W. 63]. This statute under which said bonds were issued appears to be in many of its essential features similar to the Municipal Bond Act of this state (Compiled Statutes of Nebraska [1881], p. 694). It provides that the proposition to be voted upon by the electors of said city shall state the rate of interest the bonds shall draw and that if two-thirds of the votes cast at said election be in favor of the proposition submitted the city council shall thereupon issue said bonds. Under this statute the city council of Omaha submitted to the voters of said city a proposition for the issuance of bonds to draw interest at six per cent. The proposition was adopted ''and the mayor and council having ascertained that bonds at a less rate of interest than six per cent could be sold at their face value, issued said bonds with interest at five per cent, but conforming in all other respects to the proposition as adopted by the electors.'' In a proceeding to declare these bonds illegal and void the supreme court of Nebraska held: ''No question is raised as to the authority conferred upon the mayor and council, when properly authorized by the electors of the city, to issue bonds for the purpose indicated, and the only question for determination is, did the insertion of a *less* rate of interest in the bonds than was provided in the proposition, affect their validity, the bonds at the reduced rate bringing more than their face value? The attorneys in the case have been unable to find any case bearing directly upon the question, and in our researches we have found none. The general rule is that all contracts made by municipal officers in excess of their powers are void; and the rule applies to municipal bonds. In the case under consideration, however, the power to issue bonds of the kind actually issued and sold was expressly conferred, except as to interest. Under that power, bonds for a greater rate of interest than six per cent could not legally be issued, because the greater rate of interest would be in excess of the authority conferred. The officers issuing the bonds are public agents of the city, and must act within the scope of their authority. This authority is in the nature of a power of attorney to issue bonds of a certain description in the name of the municipality to raise a defi-

nite sum for the use of the city for a specified purpose. The object was to raise one hundred thousand dollars. If this can be done for a less interest than the agents were authorized to pay, the city is benefited to that extent, and the contract is not *ultra vires*. It is a fundamental principle of the law of agency that it is the duty of the agent to protect and advance the interests of his principal. That the proper authorities of the city of Omaha have done in this case, and their acts in issuing the bonds in question being within the scope of their authority, the bonds are valid.'' A similar ruling is found in the case of *Cleveland* v. *City Council of Spartanburg,* 54 S. C. 83 [31 S. E. 871]. But the statute under which the bonds were issued expressly gave the city authorities discretion in fixing the rate of interest to be paid on the bonds. We have found no authority contrary to the case of *Omaha National Bank* v. *City of Omaha, supra,* and none has been called to our attention. Our statute is somewhat more elastic than the Nebraska statute considered in the Omaha case. We think there is substantial ground for holding that under the Municipal Bond Act of 1901 the board of trustees are invested, at least impliedly, with some discretion in fixing the rate of interest in the bonds. It is doubtful whether the same can be claimed for the Nebraska statute and the court there based its decision upon the broad ground that the city council as agents of the city were in duty bound to protect and advance the interest of the city and that they had done so by issuing the bonds at the lower rate of interest. [2] It is not necessary for us to go to this extent in upholding the validity of the bonds here in controversy, for the reason that in our opinion the statute clothes the board of trustees with a certain discretion in fixing the interest the bonds shall bear, provided the interest is not more than six per cent per annum, payable semi-annually, and does not exceed that recited in the ordinance calling the election.

[3] Respondent further contends that the Municipal Bond Act, as amended in 1915 and as it stood when the proceedings to issue said bonds were taken, provided for the issuance of bonds under two different methods, one method providing that the rate of interest shall be recited in the ordinance, in which case the bonds must bear the same interest as that recited in the ordinance, and the

other method providing that the maximum rate of interest shall be recited in the ordinance, in which case the board of trustees might issue bonds bearing any rate of interest less than the maximum rate recited in the ordinance. These two methods, respondent contends, being contained in the same statute, it must be assumed that the legislature intended that the result of proceeding under one of such methods would be different from that of proceeding under the other, and that if under the second method the board has power to fix a rate less that the maximum rate recited in the ordinance, as it unquestionably has, then under the first method provided for in the statute it has no such power. This argument would be more persuasive if the statute in its original form had embraced these two methods, but as we have already seen, the second method was provided for in the amendment of 1915. As originally enacted the statute provided for the first method only. The intent of the legislature in the enactment of this statute must be determined from the terms of this statute at the time of its enactment and not by any amendment subsequently adopted. We think we have shown that the legislature by the statute as originally enacted did not intend that the rate of interest fixed in the bonds should necessarily be the same as that recited in the ordinance. The legislature of 1915 may have placed a different construction upon this statute or it may have considered that its meaning in respect to the power of the board of trustees to fix a less rate of interest than that recited in the ordinance was uncertain, and in order that there might be no question as to such power, it amended the statute by adding the proviso which made certain that which might otherwise be considered uncertain. But whatever may have been the reason that prompted the legislature to enact the amendment of 1915, nothing that it did then and no intent that it or any of its members then had could affect the intent of the previous legislature which adopted the statute in its original form. Therefore the presence of these two methods in the statute as now in force does not necessarily indicate that there is any material difference in their application or in the results to be obtained by proceedings under one than those which might be reached if the other of such provisions were

followed. We are, accordingly, not able to agree with this last contention made by respondent.

For the reasons hereinbefore stated, we are of the opinion that the bonds issued in pursuance of the resolution of the board of trustees of the said Town of Martinez, of date February 23, 1927, are valid and that it is the duty of the respondent, as town clerk of said town, to countersign the same as provided by the Municipal Bond Act. Let a peremptory writ of mandate issue out of this court directed to the said respondent, Raymond B. Johnson, as town clerk of the Town of Martinez, directing him as such town clerk to countersign the bonds issued in pursuance of the resolution of the board of trustees of such Town of Martinez on the twenty-third day of February, 1927.

Preston, J., Shenk, J., Seawell, J., Langdon, J., and Waste, C. J., concurred.