[Civ. No. 7292. Third Dist. June 27, 1946.]

CITY OF REDDING, Petitioner, v. DORIS L. HOLLAND, as City Clerk, etc., Respondent.

Glen D. Newton for Petitioner.

Orrick, Dahlquist, Neff, Brown & Herrington for Respondent.

THOMPSON, J.—This is a petition for a writ of mandamus to require the respondent as Clerk of the City of Redding to countersign and execute municipal bonds in the sum of $200,-000, which were voted at an election and authorized by ordinance of the city for defraying the cost of a proposed sewage

system. The respondent demurred to the petition on the ground that it fails to state facts sufficient to warrant the issuance of the writ.

The respondent contends that the bonds are void because the ordinance calling for the election stated that *"at least* one-thirty-eighth part of the principal sum of said indebtedness shall be paid each and every year, . . . *beginning three years from the date of the issue of such bonds,"* instead of providing for the payment of a series of such bonds "each and every year" beginning with the date of the issuance thereof. It is asserted that the foregoing quoted language of the ordinance is in conflict with the statute and misled the voters to their prejudice.

The petitioner contends that the language of the ordinance is not misleading or prejudicial since it does not purport to fix the time of payments of the *whole indebtedness* of $200,000, but merely states that "at least one-thirty-eighth part" thereof will be paid each and every year beginning three years from the date of the bonds; that the statute does not require the *ordinance calling for an election* to state the time for payment of the bonds, but contemplates that the legislative body will subsequently fix the terms and conditions of payment of the bonds after they have been duly voted and approved, which was exactly what the city council did in this case. It is claimed that the language of the ordinance is not misleading, even though it may be ambiguous, since the voters must be presumed to know that the law requires payments of series of bonds each and every year from the date of their issuance, and that the challenged language of the ordinance does not prohibit the council from conforming with the law by subsequently providing for payments of the series to become due in the first and second years after the date of issuance thereof, which the council did by a duly enacted ordinance.

The issuance of the bonds was authorized and the election was held April 9, 1946, pursuant to the provisions of the act, as amended, for incurring indebtedness for municipal improvements. (Stats. 1901, p. 27; 2 Deering's Gen. Laws, p. 1723, Act 5178.) At the election the bonds were carried by an overwhelming vote. Ordinance number 316 was duly passed and published by the city council in accordance with the provisions of sections 2 and 3 of the act. The ordinance called for the election to be held on April 9, 1946, at a specified time and designated precincts, as required by law, to vote on

the proposed bonded indebtedness of the city of Redding, in the sum of $200,000, for the construction of a sewage plant and system. It·stated the purpose and amount of the proposed indebtedness and that the rate of interest would not exceed 3½ per cent per annum, which is all that section 2 of the act requires. It specifically declared what should be printed on the ballots and the exact form thereof under the caption ''Measures to be Voted On.'' That form of ballot stated the aggregate amount and purpose of the proposed indebtedness and the rate of interest thereon. The ballots did not state the form of the bonds which would be issued, nor the dates or times when the several bonds would be payable. The statute does not require such statements to be made on the ballot. But section 8 of the ordinance did state that:

''If at said regular election it shall appear that two-thirds of all the votes cast thereat were in favor of and authorized the incurring of a bonded debt for the purpose set forth in the proposition hereinbefore stated, then said . . . bonds will be issued to defray the costs of the said sanitary sewage treatment plant, . . . Such bonds shall be of the form and character known as serials and *at least* one-thirty-eighth part of the principal sum of said indebtedness shall be paid each and every year, . . . *beginning three years from the date* of the issue of such bonds, until all of said bonds shall have been paid.'' (Italics added.)

On June 3, 1946, the city council duly passed Resolution No. 1413, declaring the approval of said bonds by more than two-thirds of the electors voting at said election, and authorized the issuance of said bonds accordingly, in the aggregate sum of $200,000, to be paid with interest at the rate of 3½ per cent per annum payable semiannually; that said bonds would be consecutively numbered from 1 to 200, inclusive, of the denomination of $1,000 each, and dated January 15, 1946. It was then provided that said bonds ''shall mature and be payable in consecutive numerical order, from lower to higher, as follows, to wit: $10,000 principal amount of bonds shall mature and be payable on June 15th in each of the years 1947 to 1966, both inclusive.''

The resolution provided for payment of all interest coupons on the 15th day of June and December of each year. The exact form of the $1,000 bonds, in accordance with provisions of the statute, was fully set out in this resolution, and the proper officers were directed to execute the bonds by affixing

their signatures thereto. Paragraph 5 of section 5 of the act provides that the bonds shall be signed by the treasurer, "and shall be countersigned by the clerk, or one or more of his deputies."

The clerk refused to countersign the bonds. This petition for a writ of mandate was then filed, to require the clerk to perform her duty by countersigning the bonds. To that petition the respondent has filed a demurrer as previously stated.

 The only issue in this case is the question as to whether the bonds are void for the asserted reason that the voters were misled to their prejudice by the statement contained in paragraph 8 of ordinance number 316, which reads in part:

"Such bonds shall be of the form and character known as serials and *at least one-thirty-eighth part* of the principal sum of said indebtedness shall be paid *each and every year*, in lawful money of the United States, *beginning three years from the date of the issue of such bonds, until all of said bonds shall have been paid.*" (Italics added.)

The respondent claims that the foregoing language is in conflict with the third paragraph of section 5 of the act, which declares that the bonds "shall be paid *each and every year* on a day and date, and at a place or places to be fixed by the legislative body of the municipality. . . ."

We are of the opinion the voters were not misled or prejudiced by the language used in paragraph 8 of ordinance number 316, previously quoted. The statute does not require the ordinance submitting to the voters the approval of the proposed bonded indebtedness, to include therein a provision as to when or how the bonds shall be paid. Paragraph 3 of section 5 of the act does provide that the bonds "shall be paid each and every year on a day and date, and at a place or places to be fixed by the legislative body of the municipality." The voters must be presumed to have known that was the law. The city council complied with that provision of the law in its duly enacted resolution number 1413, which was passed June 3, 1946. We think that resolution is not necessarily in conflict with the language of paragraph 8 of ordinance number 316, previously quoted. That language merely stated that "*at least* one-thirty-eighth part of the principal sum of said indebtedness shall be paid each and every year, . . . beginning three years from the date of the issue of such bonds." That language does not necessarily mean that no portion of the

principal sum of the indebtedness would be payable the first or the second year after the bonds were issued. The words used may be construed to mean that the definite amounts to be paid annually were left to be subsequently determined by the city council. Nothing was said in that ordinance which compels the conclusion that no portion of the indebtedness would be paid prior to three years from the date of the issue of the bonds. We must assume the voters knew that the law required some payments to be made "each and every year" after the date of the bonds. (*State ex rel. Utah Sav. & Trust Co.* v. *Salt Lake City,* 35 Utah 25 [99 P. 255, 260, 18 Ann. Cas. 1130].) One-thirty-eighth of the total indebtedness of $200,000 is $5,263.16. The ordinance merely stated that sum, *at least,* would be paid each year beginning with the third year after the date of issuance. It did not say that no payments would be made prior thereto. The subsequent resolution fixing the specific amounts and dates of payments of $10,000 "on June 15th in each of the years 1947 to 1966, both inclusive," is not in conflict with the challenged language of section 8 of Ordinance number 316. The $10,000 payments are "at least one-thirty-eighth" of the entire indebtedness. Indeed, they are much more than that sum. Since there was an omission in said section 8 to provide for payments in the first and second years, or to specify the exact amount to be paid annually thereafter, the voters could not have been misled to their prejudice, if misled at all, by that language, even though we may concede that it may have been ambiguous. We therefore conclude the challenged language of section 8 of Ordinance number 316 did not invalidate the bonds.

In support of his contention that the bonds are invalid for the reason previously stated, the respondent relies chiefly on *City of North Sacramento* v. *Irwin,* 94 Cal.App. 652 [271 P. 788, 272 P. 767]. That case is not in conflict with what we have previously said regarding the alleged misleading language of the ordinance. In that case the city voted bonds for a sewer system in the sum of $15,000. The published ordinance, upon which the bonds were held to be invalid, specifically and definitely provided that "One-tenth part *of the whole amount* of the principal of said indebtedness created under the said proposition shall be paid each and every year, that is to say: $1,500 of the principal of said bonds *shall mature* on the first day of January of each year beginning with the first day of January, 1931, to and including the first

day of January, 1940." Also the ordinance passed by the city council after the election specifically provided that the first numbered bonds should be payable January 1, 1931, and the subsequent ones on the first day of January of the years following for the ten years. The bonds which were presented to the city clerk for countersigning likewise so provided. It was therefore apparent in that case that upon the faces of the bonds themselves their terms were in conflict with the statute by which they were authorized, in that payments thereof were not to begin until three years after their authorization. Since the maturity dates and payments of the bonds representing "the whole amount" of the $15,000 indebtedness were fixed on and after January, 1931, there was no room to assume that the council could or would subsequently provide for payment of any bonds prior to the last mentioned date, and it did not do so. The court there said that the bonds themselves were invalid. The court was therefore justified in saying in the Irwin case that:

"There was no authority in the city council, in disregard of the plain requirements of the statute, to provide that no interest shall be paid prior to January 1, 1930, or that no part of the principal shall be paid prior to January 1, 1931."

No such statement was made by the council in the present case. The difference in the language used in this and the Irwin case distinguishes them in that regard. Here the bonds themselves comply with the statute, and the only ground urged as to their invalidiy is that they do not comply with the original ordinance.

The other cases relied on by the respondent are likewise distinguishable from the facts of this case.

In the Salt Lake City case, *supra,* the court, at page 260 [99 P.], said with reference to a variance between the notice of election and the statutory requirements, that:

"The taxpayer thus cannot authorize, nor can the city officials issue, bonds without adopting the statutory method of payment. . . . The taxpayers, like all others, are thus charged with notice of the scope of the powers conferred upon such agency, since in submitting a proposition to vote bonds the city council cannot exercise implied or ostensible powers, . . . The taxpayers, in incurring a bonded indebtedness, cannot even authorize the city council to agree to any other method of payment than the one prescribed by the statute. . . . If he is permitted to urge this as an objection

to the issuance of the bonds, it must be upon the theory that he is not required to take notice of the law, nor of the powers conferred thereby upon the city council. . . .

". . . The statement may, therefore, be considered as mere surplusage and harmless. That similar statements in submitting questions to be voted for have been held mere surplusage, is illustrated by the following cases: *City of Santa Barbara* v. *Davis*, 6 Cal.App. 342, 92 P. 308; *Hamilton* v. *Village of Detroit*, 83 Minn. 119, 85 N.W. 933; *City of Cheyenne* v. *State* (Wyo.) [17 Wyo. 90] 96 P. 244; *Yesler* v. *City of Seattle*, 1 Wash. 308, 25 P. 1014."

The Salt Lake case was cited with approval with respect to the principle previously herein stated in *Allison* v. *City of Phoenix*, 44 Ariz. 66 [33 P.2d 927, 930, 93 A.L.R. 354].

In *City of Santa Barbara* v. *Davis*, 6 Cal.App. 342 [92 P. 308], a writ of mandate issued to compel the clerk to countersign and issue municipal improvement bonds as prayed for. The notice of election improperly stated that the proposed indebtedness of $50,000 would be represented by 40 bonds of the denomination of $1,250. The statute provided that no bond shall exceed the sum of $1,000. After the election the council adopted an ordinance fixing the denomination of the bonds at the sum of $625 each. The error of the notice of election in stating the denomination of the bonds to be issued was held to be immaterial. The bonds were declared to be valid.

In *City of San Diego* v. *Millan*, 127 Cal.App. 521 [16 P.2d 357], municipal improvement bonds were held to be valid, which bonds specified that they were to be paid in "lawful money of the United States" in spite of the fact that the notice of election stated they would be payable in "gold coin." The court said that method of payment did not increase the burden on the taxpayers, and that it was immaterial. In support of that conclusion, the last mentioned case cited with approval *Town of Martinez* v. *Johnson*, 201 Cal. 397 [257 P. 853], in which the Supreme Court held that municipal bonds which provided by ordinance for payment of 5 per cent interest instead of 6 per cent, as the notice of election stated, was nevertheless valid, since it did not increase the burden on the taxpayers. It was held that change was discretionary with the council, and that the statute did not require the notice of election to specifically state the exact rate of interest which the bonds would bear.

In *City of Crescent City* v. *Griffin,* 31 Cal.App.2d 133 [87 P.2d 414], a writ of mandate issued to compel the clerk to countersign the bonds. The notice of election stated that the proposed indebtedness to be incurred was $175,000, and set out the number and denomination of the bonds to be issued, which aggregated the sum of $167,000. The subsequent ordinance limited the amount to $166,500. The court held that the variance was immaterial and that it did not invalidate the bonds since the total amount of the bonds issued was less than the proposed indebtedness and the taxpayers were therefore not prejudiced or aggrieved.

■ Assuming, as was said in *City of San Diego* v. *Millan, supra,* that "the proceedings leading up to the issuance of municipal bonds create a relation between the city and its taxpayers which is in the nature of a contractual relation between parties," a departure from the statements of the ordinance calling for the election, which is not in conflict with the statute, will nevertheless not invalidate the bonds "unless the defect complained of would result in an increased burden on the taxpayers." (*City of Crescent City* v. *Griffin, supra.*) In the case last cited it is said that if it resulted in no increased burden "it would be disregarded." In support of the preceding statement, the case of *Town of Martinez* v. *Johnson, supra,* is cited. ■ In the present case it does not appear that an added burden would be placed on the taxpayers by the failure to state in that ordinance calling for the election what amount of the proposed indebtedness would be paid during the first and second years after the bonds were issued. The statute does not require the notice of election to so state. The electors were informed, as the law requires, of the purpose and amount of indebtedness, and that the maximum rate of interest would not exceed 6 per cent per annum payable semiannually. The ordinance specifically fixed the amount of indebtedness at $200,000, and the rate of interest at $3\frac{1}{2}$ per cent per annum to be paid semiannually. The form of ballots supplied to the voters contained all of that information. We are unable to perceive how the taxpayers could have been prejudiced by the use of the language complained of.

We conclude that the bonds in the present case were not invalid on account of the omission in the notice of election to specifically provide for payments of principal sums thereof in the first and second years after the issuance of the bonds

for the reason that the taxpayers and electors were not misled thereby to their prejudice since the statute does not require such statement to be made in the notice of election and the burden upon them was not thereby increased.

It is therefore ordered that the peremptory writ of mandate issue directing the Clerk of the City of Redding to countersign and issue the bonds as prayed for.

Adams, P. J., and Peek, J., concurred.