[L. A. No. 911. In Bank.—October 6, 1900.]

CITY OF LOS ANGELES, Appellant, *v.* C. H. HANCE, City Clerk, Respondent.

MUNICIPAL CORPORATION—ELECTION FOR ISSUANCE OF BONDS—MANDATORY ORDINANCE — MISDIRECTION TO VOTERS—CLERICAL ERROR—CONTROL OF BALLOTS.—At an election for the issuance of the bonds of a municipal corporation for public improvements, the ordinance providing for the manner of voting is mandatory, and must control the voters, notwithstanding a misdirection to them caused by a clerical error in drafting the ordinance.

ID.—VOTE UPON HIGH SCHOOL AND GENERAL PUBLIC SCHOOL BONDS— CONTRARY DIRECTION IN ORDINANCE — CARRIED VOTE DEFEATED.— Under an ordinance providing for high school bonds, "to be voted for or against as 'general public school bonds,' " and for bonds for public school buildings other than a high school, "to be voted for or against as 'high school bonds,' " the contrary directions in the ordinance are deemed to be followed by the voters, and where the "high school bonds" on the ballots cast

are defeated, and the "general public school bonds" on the ballots are carried, no bonds can be lawfully issued for public school buildings, other than a high school.

APPEAL from a judgment of the Superior Court of Los Angeles County.   Frank F. Oster, Judge  presiding

The facts are stated in the opinion of the court.

Walter F. Haas, and Lee & Scott, for Appellant.

Frank James, for Respondent.

HARRISON, J.—The city of Los Angeles took certain proceedings for the issuance of municipal bonds for public improvements, under the act of March 19, 1889 (Stats. 1889, p. 399), and adopted an ordinance submitting to the voters of the city the question whether the bonds should be issued.   The city council, having declared that a majority of two-thirds of the voters had voted in favor of their issuance, passed an ordinance for their issuance and sale.   Bonds were thereupon prepared and signed by the mayor and treasurer, as required by the ordinance, and presented to the respondent, as clerk of the city council, with the demand that he countersign the same and affix thereto the corporate seal of the city.   Upon his refusal so to do this proceeding was instituted for a writ of mandate compelling him thereto.   The superior court denied the application for the writ, and the city has appealed.

The proceedings had by the city  council were as  follows: July 7, 1899, the city adopted an ordinance declaring that the public interest and necessity demanded the following municipal improvements: 1. The acquisition of land and the construction thereon of a high school building, of which the estimated cost was two hundred and twenty thousand dollars; 2. The acquisition of land and the construction thereon of public school buildings, other than a high school, of which the estimated cost was two hundred thousand dollars; and that the cost of such improvements was too great to be paid out of the ordinary annual income and revenue of the city.   After these ordinances had been published for two weeks the city council, on July 24th, adopted another ordinance providing for the holding of a spe-

cial election for the purpose of voting for or against the issuing of bonds for the payment of the cost of these improvements. In this ordinance the council declared its intention to submit to the qualified voters of the city the proposition of incurring a bonded indebtedness as follows: 1. Bonds in the amount of two hundred and twenty thousand dollars for the purpose of acquiring land and constructing thereon a high school building, "said bonds to be voted for or against as 'general public school bonds'"; 2. Bonds in the sum of two hundred thousand dollars for the acquisition of land and the construction thereon of public school buildings other than a high school, "said bonds to be voted for or against as 'high school bonds'"; and ordered that a special election be held August 22d for the purpose of submitting to the voters the proposition of incurring a bonded indebtedness for those purposes. The ordinance also declared: "The ballot to be used at said election shall read as follows:

| For the issuing of High School Bonds. |
|---|
| Against the issuing of High School Bonds. |
| For the issuing of General Public School Bonds. |
| Against the issuing of General Public School Bonds. |

"Voters voting at said election shall indicate their choice by stamping a cross (X) in the square at the right of the affirmative or negative of the proposition to be voted upon."

This direction and form of ballot was repeated in the notice calling the election, but neither the ordinance nor the notice specified, other than as above shown, upon which of the two propositions the several ballots given in the above form were to be cast. The omission to thus designate which of the forms of ballots was to be used upon the respective propositions left the previous direction in the ordinance the only guide to the voter in determining how he should vote upon either of the

propositions. It is difficult to conceive the motive which prompted the city council to direct the ballots to be cast in this form, or why a voter who was to vote for incurring an indebtedness for the public schools generally should be required to vote "for the issuing of high school bonds"; and it is very likely that it was a clerical error in drafting the ordinance. But the voter had no alternative than to vote upon the proposition in the manner which had been prescribed in the ordinance. (*Murphy v. San Luis Obispo*, 119 Cal. 624.)

Upon the canvass of the votes cast at the election it was found that fourteen hundred and twenty-four votes had been cast for the issuing of high school bonds, and eleven hundred and sixty-three votes against the issuing of high school bonds; and that two thousand and thirty-five votes were cast in favor of issuing general public school bonds, and five hundred and seventy-nine votes against issuing general public school bonds. The city council thereupon passed an ordinance for the issuance of bonds in the sum of two hundred thousand dollars for the acquisition of lands and the construction of public school buildings thereon, other than a high school, each of said bonds to be entitled "general public school bond," and directing that they be sold, and the proceeds thereof placed in the "general public school bonds fund." The bonds thus directed are the ones which were presented to the respondent to be countersigned and sealed by him.

As it appeared upon the canvass of the returns of the election that the proposition for incurring an indebtedness for the acquisition of lands for public school buildings other than for a high school, received less than two-thirds of the ballots cast in the form which had been prescribed by the ordinance, the proposition was defeated, and there was no authority for issuing the bonds in question. Upon the "proposition" submitted to the voters for incurring an indebtedness for the purpose of acquiring land and constructing thereon public school buildings other than a high school, they could cast their ballots only in the form prescribed in the ordinance, viz.: "For the issuing of high school bonds," or "Against the issuing of high school bonds." It is altogether probable that when the voters cast their ballots in favor of issuing "general public school bonds" they intended to authorize the incurring of an indebtedness for

the construction of ordinary public school buildings, but this is only conjecture, and for the purpose of determining the intention of a voter in matters of this nature conjecture can never supersede the construction to be given to the intention, which he indicates by his compliance with the mandatory direction in which he is required to vote. (*Murphy v. San Luis Obispo, supra.*)

As the bonds tendered to the respondent were never authorized by the voters of the city, his action in refusing to countersign them was justified.

The judgment is affirmed.

Temple, J., McFarland, J., Garoutte, J., Van Dyke, J., and Beatty, C. J., concurred.