[Civ. No. 707.   Third Appellate District.—August 17, 1910.]

M. A. JENKINS and C. T. WELLS, Copartners, etc., Respondents, v. L. P. WILLIAMS, Auditor of County of Sacramento, Appellant.

COUNTIES—BONDED INDEBTEDNESS—CONSTRUCTION OF CODE—SPECIFICA-TIONS IN PUBLISHED ORDER—GENERAL STATEMENT ON BALLOT.— Where a county called an election to incur bonded indebtedness for specified improvements under an order made and published in pursuance of section 4088 of the Political Code, specifying all of the particulars for which each specified amount of bonds was to be appropriated, and submitting to the electors a general statement of the total amount required for each general purpose, the order of the board was jurisdictional, without which the election would have no validity; the published order formed an essential part of the proposals to be submitted to the vote of the electors, and it was the order which was ratified by them.

ID.—NATURE AND CONSTRUCTION OF ORDER—TERMS PART OF LAW—
    LIMIT OF POWER OF BOARD.—The published order has the force of
    an ordinance, though not so called; and as it was passed in pur-
    suance of the statute, has the force and effect of a law of the
    state, and is to be construed as if its terms had been incorporated
    in the statute. No discretion is reserved to the board in the ex-
    penditure of money, because of the lawfully permitted general
    form of the ballot; but the specific purposes defined in the order
    are as binding as if expressed in the ballot; and though the bonds
    form distinct funds for a distinct set of purposes specified, the
    order still remains as the limit and measure of the board's power
    to expend the money.

ID.—MONEY PROPERLY SET APART BY AUDITOR—BRIDGE FUND—MAN-
    DAMUS NOT PERMISSIBLE.—The money was properly set apart by
    the auditor to each distinct fund for each distinct purpose for
    which the bonds for that purpose were sold, pursuant to the order,
    and he has no power to issue a warrant to be paid out of the
    bridge fund for expenditure on any one bridge in excess of the
    amount appropriated therefor; and *mandamus* will not lie to com-
    pel him to make such payment.

ID.—SURPLUS—STATUTORY APPLICATION TO BONDS.—Where any "sur-
    plus" remains in the bridge fund, the statute expressly applies
    it toward the payment of bonds, and any surplus of money unex-
    pended in the construction or repair of a particular bridge must
    be so applied, and cannot be appropriated to make up a de-
    ficiency arising on a different expenditure in excess of the amount
    allowed therefor.

ID.—PROVISION FOR LIABILITIES IN EXCESS OF APPROPRIATION.—The
    board had no power to expend any part of the bridge fund in
    violation of the statute by making a contract therefor in excess
    of the amount appropriated; and if the board had incurred lia-
    bilities for this purpose in excess of that amount, such excess
    must be paid, if at all, out of some other fund.

APPEAL from a judgment of the Superior Court of Sacra-
mento County, and from an order refusing to vacate the
judgment.   C. N. Post, Judge.

The facts are stated in the opinion of the court.

Eugene S. Wachhorst, District Attorney, for Appellant.

Devine & Butler, Snook & Church, and Devlin & Devlin,
for Respondents.

CHIPMAN, P. J.—This was an action to compel defendant
by *mandamus* to draw his warrant for the sum of $503.16 in

favor of plaintiffs, on the county treasurer of Sacramento county.

Plaintiff had judgment, from which and from the order denying his motion to set aside and vacate the judgment, defendant appeals.

It appears, from the finding marked IX, that the board of supervisors, on August 6, 1907, duly passed an order declaring that it was necessary that a bonded indebtedness be incurred "for the purposes hereinafter stated," and, to that end, the board ordered that a special election be held "for the purpose of submitting to the qualified electors of the county of Sacramento the question of issuance of bonds for the purpose of creating an indebtedness of $660,000 for the purpose of erecting and constructing a new county courthouse, and in connection therewith a new county jail, in the said county of Sacramento; and also for the sum of $600,000 for the purpose of building and constructing roads and highways in said Sacramento county; and also for the sum of $225,000 for the purpose of building and constructing bridges in said Sacramento county. Said amounts above specified and said purposes so stated are more particularly designated and described as follows, to wit:

"First: The sum of $660,000 to be expended" in the erection of a courthouse and county jail.

"Second: The sum of $600,000 for the purpose of building roads and highways in said county of Sacramento, as follows, viz.: Sacramento to Folsom, 21 miles—$105,000." Then follow six other roads, specifically named, their length and amount to be expended on each, making in all $600,000.

"Third: The sum of $225,000 for the purpose of building and constructing bridges in said county of Sacramento as follows, to wit:

"Michigan Bar bridge, repairs.....................$ 3,000
"New steel bridge over Cosumnes river at Bridge
    House, Sacramento county ...................$18,000

             ❉   ❉   ❉

"Twelfth Street American river bridge, repairs.....$ 5,000

             *   *   *

"New Morman Island bridge (one-half)...........$15,000"

          *   *   *

Of these several bridges there are thirty in all, the building or repair of which amounted to $225,000, varying in sums from $63,000, the highest, to $500, the lowest.

"All of said bonds for the several purposes hereinbefore enumerated shall be of the denomination"—then follow description, time to run, etc.

"The said special election to be held throughout the county of Sacramento, . . . for the purpose of submitting to a vote of the qualified electors of Sacramento county the above and foregoing propositions, is hereby fixed for Tuesday, the 10th day of September, A. D. 1907."

Findings X and XI are: That the board duly published notice of this election by proclamation, in which the purpose of the election was set forth fully and in the terms and language substantially of the foregoing order made by the board. The election was duly called and held and the ballots used at said election were in form and substance as follows:

"Bonds for the sum of $660,000, to be expended in the construction and erection of a new courthouse and in connection therewith a new county jail, in said county of Sacramento—Yes."

The same—"No."

"Bonds for the sum of $600,000 to be expended in building and constructing roads and highways in said county of Sacramento—Yes."

The same—"No."

"Bonds for the sum of $225,000 to be expended in building and constructing bridges in said county of Sacramento—Yes."

The same—"No."

The election was in favor of the bonded indebtedness and bonds were issued and sold in accordance therewith.

It further appears, by finding XII: That the sum of $225,000 was raised from the sale of said bridge bonds, as aforesaid, and the same paid into the treasury of the county. "That thereupon, the said sum of $225,000 was by the auditor of said county of Sacramento, to wit, the respondent above named, without any order therefor having been made by the board of supervisors of said county of Sacramento, placed in his books in several and separate funds, and in amounts corresponding to the estimated cost of the several bridges."

Appellant invites attention to finding IX and finding XII, and claims that the auditor was acting under the order of the board of supervisors in placing the bridge funds in several accounts corresponding with the amounts designated by the board to be expended in each instance. Appellant therefore claims that finding XII is not supported by the evidence.

It was further found that the amount used in the construction of several of said bridges fell short of the amount apportioned for the building of the same, and "that there is therefore now in the treasury of the said county of Sacramento more than the sum of $503.16 as a surplus from the cost of construction .and work and labor performed on said several bridges." It was also found that there remains in the treasury of said county the sum of $86,741.47, the same being the total of all sums unexpended for work upon the several bridges in the said county to the date of the filing of the petition. It was undisputed and the evidence was that all the bridges had not as yet been constructed, and it did not appear how much money would be required to complete· them, but it did appear that after the completion of the new Morman Island bridge there was a surplus of over $503.16, apportioned for that bridge. It appears, also, that the board entered into a written contract with plaintiffs to pay them $5,388, to perform the work on the "Twelfth Street American river bridge, repairs," and that they completed the work, were paid $5,000 and no more, and that they duly presented their claim to the board for $503.16, to be paid out of this bridge bond fund, which was allowed and ordered paid, but defendant refused to issue his warrant therefor.

The conclusion of law found by the court was that plaintiffs are entitled to a writ commanding defendant to pay the said claim of $503.16 "out of the moneys in his hands from the sale of bonds for bridges," and such was its judgment.

The statute under which the board proceeded is found in section 4088 of the Political Code (Stats. 1907, p. 382, County Government Act). So much of the section as is necessary to be now considered reads as follows:

". . . Any county may incur or refund a bonded indebtedness for any purposes for which the board of supervisors are herein authorized to expend the funds of said county, or for the purpose of building or constructing roads, bridges or high-

ways. Such indebtedness shall be incurred in the following manner, to wit: The board of supervisors thereof shall by order specify the purpose for which the indebtedness is to be incurred, the amount of bonds they propose to issue, the rate of interest, . . . and shall further provide for submitting the question of the issuance of said bonds to the qualified electors of the county at the next general election or at a special election to be called by the board for that purpose, and the words to appear upon the ballot shall be 'Bonds—Yes,' and 'Bonds—No,' or words of similar import, together with a general statement of the amount and purpose of the bonds to be issued. Several separate propositions may be submitted at the same election. . . .'' The section then provides for the calling of the election, who shall be qualified electors, and provides for publishing notice of the election: ''Such notice must contain the time and place of holding the election, . . . the amount and denomination of the bonds, the rate of interest to be paid,'' etc. Provision is then made as to the form of the bond, how and when to be paid and the like. ''And the board of supervisors, before or at the time of issuing said bonds by ordinance shall provide for the levy of an annual tax sufficient to effect the object of this provision. Such tax when collected, shall be paid to the treasury of the county, and used solely to pay the interest and principal of said bonds as they respectively become due. The revenue derived from the sale of said bonds shall be applied to the purpose specified in the order of the board, and no other. Should there be any surplus, it shall be applied toward the payment of said bonds. The board of supervisors of any county can contract a bonded indebtedness for county purposes only as in this title provided.''

The position taken by the plaintiffs at the trial and here is that the face of the ballot expressed the will of the voters, regardless of the notice given to them by the order and proclamation of the board; that the $225,000 was to constitute the bridge fund, and all of it could be lawfully used for the construction of one bridge, if necessary; that the ballot sufficiently complied with the statute in making a ''general statement of the amount and purpose of the bonds to be issued.'' If this position be correct, it would follow that the board might not only expend all the bridge bond money on a single

bridge, but it might also expend all the road and highway money upon a single road, and this, too, in direct conflict with the order of the board and the proclamation and notice given to the electors. We cannot agree to this construction of the statute. It is not necessary to consider whether it would have been sufficient compliance with the statute had the order and the notice or proclamation to the electors simply stated the purpose as it was stated in the ballot—i. e., "the sum of $225,000 to be expended in building and constructing bridges in said Sacramento county," for that is not what the board did. (See *McMahon* v. *Board of Supervisors*, 46 Cal. 214.) The electors were notified that they would be called upon to vote "yes" or "no" upon the proposition to bond the county for that amount, to be used as it was ordered by the board it should be used to construct thirty different and specifically named bridges, the amount to be expended on each bridge being specifically mentioned, and the electors did not authorize, and certainly did not intend to authorize, the bonding of the county to such an extent, leaving it discretionary with the board to expend the entire amount on one bridge and wherever the board might elect. The statute seems to be plain enough. It says: "Such indebtedness shall be incurred in the following manner, to wit: The board of supervisors thereof shall by order specify the purpose for which the indebtedness is to be incurred," and it then directs that in submitting the purpose set forth in the order to be voted upon by the electors there shall appear upon the ballot: "Bonds—Yes, and Bonds—No, or words of similar import, together with a general statement of the amount and purpose of the bonds to be issued." The brief statement of the purpose upon the ballot identifies the proposition more fully set forth in the order of which the electors are fully advised by publication of the order. To make the meaning of the legislature clear, the act provides that "the revenue derived from the sale of said bonds shall be applied to the purpose specified in the order of the board of supervisors, and no other." The language is— "the purpose specified *in the order* of the board," not in the ballot, the form of which they prescribed as directed by the statute. In dealing with any surplus which might arise in expending the money for any of the specified purposes, the law expressly provides that "it shall be applied toward the

payment of said bonds." Finally, the board is informed that it can "contract a bonded indebtedness for county purposes only as in this title provided."

In its order the board declared that it was necessary to incur a bonded indebtedness "for the purposes hereinafter stated," and that "said amounts above specified and said purposes so stated are more particularly designated and described as follows"; then follow the specifically enumerated specified purposes submitted to the electors for their vote "yes" or "no." Here was $600,000 which the voters were told was to be expended in constructing seven different roads in the county, and $225,000 to be expended in constructing thirty different bridges, and we are asked to hold that these large amounts, ordered by the board for specific purposes, could be divided up and shifted about at the discretion or possible caprice of the board and for purposes in direct violation of its order and the statute.

The order of the board was jurisdictional, without which the election and the bonds would have had no validity; the published order of the board formed an essential part of the propositions submitted to the vote of the electors, and it was the order which was ratified by them. Respondents' contention would lead to results still wider than we have suggested, for by it the board could expend all this money on roads and bridges, no one of which was enumerated in the order, and this must be so if it be true that the statement made on the ballot of the purpose is the measure of the board's power.

It is claimed by plaintiffs that "the board of supervisors cannot order a bonded indebtedness for a number of purposes and then submit the question to the voters as a single purpose. It naturally follows, therefore, that it was not the intention of the board to have the estimated cost of construction and repairs of each separate bridge considered as a distinct purpose, for if it had, each purpose would have had to have been submitted separately to the voters. A bonded indebtedness, therefore, of $225,000 was created for the construction and repair of bridges in the county, and that constituted but a single purpose." The force of the argument rests upon the contention that the purpose declared upon the ballot is controlling, and that the provisions of the order of August 6, 1907, are of no consequence. But this order has all the force

of an ordinance, although not so called, and, as it was "passed in pursuance of the statute, has the force and effect of a law of the state, and is to be construed as if its terms had been incorporated in the statute itself." (*Murphy* v. *San Luis Obispo,* 119 Cal. 624, [51 Pac. 1085] ; *City of San Luis Obispo* v. *Fitzgerald,* 126 Cal. 279, [58 Pac. 699].) This order or ordinance was published to give notice to the voters of its purpose and what it was proposed to do with the money derived from the bonds. It does not seem reasonable that the board of supervisors intended or that the voters intended that the power should be reserved to the board to expend the money at their discretion. The more reasonable construction to be given the order and the statute is that the purposes specified in the order should control. It was not necessary that the ballot should contain a statement of all these purposes in order to comply with the statute, inasmuch as they were particularized in the order, for the statute only requires that the ballot shall contain "a general statement of the amount and purpose of the bonds to be issued," but where the order defines the purposes specifically, it should be as binding upon the board as though these specific purposes had been expressed on the ballot. Nor does the fact that the bonds for bridge purposes constituted one fund, i. e., that there was not created a separate bonded indebtedness for each bridge to be constructed, affect the question. The order still remains as the measure of the board's power to expend the money. The auditor rightly set apart this fund agreeably to the order, and, in our opinion, he has no power to issue a warrant to be paid out of this fund for any one bridge in excess of the amount thus set apart.

It is further contended by plaintiffs that the provision of the statute relating to any surplus remaining of the fund refers only to such surplus as shall be left over after all the bridges are completed. But as plaintiffs contend that the board is in no wise controlled by the purposes mentioned in the order, it would not be likely to happen that there would ever be a surplus, for, under the construction urged, the board could use the bridge bond fund for constructing bridges anywhere in the county at any time and so long as there was money left to do so. The statute says: "Should there be

14 Cal. App.— 7

any surplus, it shall be applied toward the payment of said bonds." Consistently, we must hold that the surplus here referred to is money unexpended in the construction of any bridge which the board has specifically declared was to be constructed or repaired out of this bridge bond fund.

But plaintiffs further contend that as this fund was a single fund to be used at the discretion of the board, the latter had the right to contract to pay any cost in the construction of any one bridge which might happen to be in excess of the amount mentioned in the order for the construction of that particular bridge. This would be true if plaintiffs' construction of the statute were correct, for they urge that the board had the power to expend the entire fund on one bridge. But if the board had not such power, it could not confer it in violation of the statute by making a contract. By force of the statute and its order the power of the board was limited in the expenditure of the money arising from the sale of these bridge bonds to the sum of $5,000 for the "Twelfth Street American river bridge, repairs," and if the board has incurred liabilities for this purpose in excess of that amount, such excess must be paid, if at all, out of some other fund.

It seems to us that the views herein expressed are consistent with the letter and spirit of the statute, and that the construction contended for by plaintiffs would open the door to possible, if not probable, dangerous abuse of power, and would take from the vote of the people all its significance as well as defeat its purpose.

The judgment and order are reversed.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 13, 1910.