[Civ. No. 6208. Third Appellate District.—February 17, 1939.]

THE CITY OF CRESCENT CITY (a Municipal Corporation), Petitioner, v. E. R. GRIFFIN, as City Clerk, Respondent.

T. F. Peterson for Petitioner.

Orrick, Dahlquist, Neff & Harrington for Respondent.

TUTTLE, J.—This is an original proceeding in *mandamus* instituted by petitioner, the City of Crescent City, a municipal corporation, against the respondent, E. R. Griffin, as City Clerk of said City of Crescent City, for the purpose of compelling the respondent to countersign certain general obligation bonds of the City of Crescent City alleged to have been authorized by the qualified electors of said city at an election held on the 28th day of September, 1937. An alternative writ of mandate was issued by this court, and the agreed facts follow.

Petitioner, City of Crescent City (hereinafter for convenience sometimes designated as the "City"), is a city of the sixth class, and was incorporated as a municipal corporation under the Municipal Corporation Bill of 1883, and is located in the county of Del Norte, state of California.

The respondent, E. R. Griffin, is now, and was at all times herein mentioned, the duly elected, qualified and acting city clerk of said city.

Under and pursuant to the terms of the Acquisition and Improvement Act of 1925, there were formed in the City of Crescent City two districts, respectively known as "Acquisition and Improvement District No. 1" and "Acquisition and Improvement District No. 2." Acquisition and Improvement District No. 1 comprises approximately 89 per cent of the City of Crescent City, and contains property of the assessed value of approximately $1,500,000, and as of July 1, 1937, had issued and outstanding bonds of the aggregate face amount of $68,000, and interest thereon delinquent in the amount of $10,728.66. Acquisition and Improvement District No. 2 comprises the entire City of Crescent City, and contains property of the assessed value of approximately $1,600,000, and as of July 1, 1937, had issued and outstanding bonds of

the aggregate principal amount of $163,000, and interest thereon delinquent in the amount of $12,590.

Many of the assessments levied upon the lands in said districts were delinquent, and said city deemed it advisable to readjust the burden of said assessments, and to that end instituted and took the proceedings hereinafter set forth under the provisions of that certain act of the legislature of the state of California entitled: "An Act for the relief of certain assessment districts, and for that purpose empowering incorporated cities to render financial aid to such districts and to declare the urgency of this act, to take effect immediately." Approved June 21, 1937. (Stats. 1937, chap. 494, p. 1468.)

Proceeding under said act, the city council of the City of Crescent City (hereinafter for convenience sometimes designated as the "Council"), at an adjourned regular meeting thereof held on the 26th day of July, 1937, by the affirmative vote of all of the members of the council, adopted a resolution designated "Resolution No. 142", entitled: "Resolution determining that the public convenience and necessity demand, and that the general interest of the City of Crescent City will be served and promoted by, the incurring of said City of Crescent City of bonded indebtedness by the issuance and sale of bonds to be known as General Obligation Bonds of the City of Crescent City, in the amount of $175,000, the proceeds from the sale of which shall be used for the purchase at a discount of securities of certain assessment districts known as Acquisition and Improvement District No. 1 and Acquisition and Improvement District No. 2."

In said resolution the city council determined and declared that the cost of purchasing at a discount the securities of Acquisition and Improvement District No. 1 and Acquisition and Improvement District No. 2 therein mentioned would be too great to be paid out of the ordinary annual income and revenue of the city. Subsequently, at an adjourned regular meeting of the council held on the 2d day of August, 1937, the council finally passed and adopted ordinance No. 282, entitled: "An Ordinance of the City of Crescent City calling a special municipal election to be held in said City on Tuesday, the 28th day of September, 1937, for the purpose of submitting to the voters of the City of Crescent City the proposition of incurring a bonded indebtedness for the purpose of purchasing at a discount the bonds, and unpaid

coupons thereon, of certain assessment districts known as 'Acquisition and Improvement District No. 1' and 'Acquisition and Improvement District No. 2' and situated in the City of Crescent City.''

Said Ordinance No. 282 was given its first reading at an adjourned regular meeting of the council held on the 26th day of July, 1937, and read and adopted at an adjourned regular meeting of the council held on the 2d day of August, 1937, in each case by the vote of more than two-thirds of the members of the council. Thereafter, to wit, on the 6th, 13th, 20th and 27th days of August, 1937, said Ordinance No. 282 was published in the Del Norte Triplicate, a weekly newspaper of general circulation published in said city.

Pursuant to said Ordinance No. 282, a special election was held in the City of Crescent City on the 28th day of September, 1937. Subsequently, at an adjourned regular meeting of the council held on the 5th day of October, 1937, the council proceeded to canvass the returns of said election, and, after completing the canvass of said returns, the council passed and adopted Resolution No. 147, entitled: ''Resolution declaring result of election,'' in which the council set forth as the result of said election that 625 electors voted in favor of said proposition, and in favor of the issuance of said bonds of said city in the amount of $175,000, in accordance with the provisions of the ordinance calling said election, and that 85 electors voted against said proposition and against the issuance of said bonds of said city, and that more than two-thirds of all the electors voting on said proposition at said special election voted in favor thereof and in favor of the issuance of said bonds authorized to be issued pursuant thereto, and that said proposition carried.

Thereafter the council passed and adopted by the affirmative vote of all of its members an ordinance designated as Ordinance No. 287, entitled: ''An ordinance of the City of Crescent City directing and providing for the issuance of municipal improvement bonds of said city to represent a bonded indebtedness of said city in the sum of $175,000 authorized at a special election held in said City on the 28th day of September, 1937, specifying the form of said bonds, providing for a tax levy for the payment of the principal and interest thereof, and creating a municipal bond fund.''

Thereafter, the council, at a special meeting thereof held on the 16th day of January, 1939, by the affirmative vote of more than two-thirds of the members of the council, adopted a resolution designated "Resolution No. 176" entitled: "Resolution declaring that the public convenience and necessity demand, and that the general city interest of the City of Crescent City will be served and promoted by, the expenditure by the City of Crescent City of the proceeds from the sale of $166,500 principal amount of general obligation bonds of the City of Crescent City for the purchase at a discount of securities of certain assessment districts known as Acquisition and Improvement District No. 1 and Acquisition and Improvement District No. 2, specifying in detail the maximum amount to be expended or contributed for said Districts, the manner in which the same is to be used and the facts and circumstances showing the manner in which, and the reason why the general city interest and welfare will be served and promoted by the expenditure to be made."

Said City of Crescent City is ready and willing to execute, sell and deliver said bonds, but respondent herein, as City Clerk of said City of Crescent City, has refused, and still refuses, to countersign said bonds, and none of said bonds have been executed or delivered; respondent alleges, as the ground for his refusal to countersign said bonds, that said bonds, if issued, would be invalid because of defects in the preliminary proceedings leading up to the issuance of said bonds.

At the outset we wish to observe that in considering the objections raised by respondent as to the legality of the proceedings, we are guided and controlled to a considerable extent by the provisions of act of 1937, relating to the manner in which such proceedings should be construed. The provision referred to reads as follows:

"This Act and all of its provisions shall be liberally construed, to the end that the purposes hereof may be made effective."

A liberal construction has been defined as "one which expands the meaning of the statute to meet the cases which are clearly within the spirit or reason of the law or within the evil which it was designed to remedy, provided that such an interpretation is not inconsistent with the language used". (12 C. J., p. 1302.)

We also have in mind that the statute mentioned was an emergency measure, and we quote from some of the facts constituting such emergency:

"Many hundreds of properties in these districts are being deeded to the State and to cities in this State for delinquent taxes and assessments and unless the financial aid of the city is immediately made available to assist these overburdened districts thousands of parcels of land will be stricken from the tax rolls this year; thousands of property owners will lose their homes, millions of dollars in governmental revenue will be uncollectible and at the same time thousands of bondholders will be unable to realize any return upon their investments."

It is true that the proceedings were based upon the statute of 1901, but this is for the reason that in section 3 of said act of 1937, it is expressly provided that bonds of this character may be issued under said act of 1901. By adopting the method of procedure in the latter act, the legislature, in the act of 1937, virtually made the act of 1901 a part of the act of 1937.

The first objection made is that the ordinance calling the election provides for issuing only $167,000 principal amount of bonds, whereas the proposition submitted to the electors is for the incurring of the bonded indebtedness of $175,000.

We first call attention to the fact that the city council later on passed Ordinance No. 300, which provides that the limit of bonds to be issued under said proceedings shall be $166,500. Such limitation appears to be permissible under the provisions of the act of 1901, section 6½. The facts appear to be that while the first paragraph of section 2 of said ordinance states that the principal of the indebtedness proposed to be incurred is $175,000, the second paragraph of said section enumerates the number of annual payments and the amount thereof. A computation of the aggregate of these latter amounts as given in this second paragraph shows that the total is $167,000. It is urged by respondent that the provision in paragraph 2 for the specific serial maturities became an integral part of the proposition voted on by the electors, and it cannot be said that the proposition would have carried except for this specific provision under which only $167,000 principal amount of bonds was authorized. We cannot say

that any prejudice arose because of the discrepancy mentioned. The city council, under authority of law, passed a subsequent ordinance which limited the amount of the issue to $166,500, which is a sum below the total of the serial maturities of $167,000. If the council had attempted to issue bonds under these proceedings in the sum of $175,000, we would have no hesitation in saying that such action would result in invalidating the bonds. Certainly, no elector could object to the issuance of bonds below either amount specified in the ordinance calling the election, and therefore, no substantial prejudice resulted from this alleged defect. The decisions cited by respondent are not in point. In *O'Farrell* v. *County of Sonoma*, 189 Cal. 343 [208 Pac. 117], the question involved was the right of the board of supervisors to spend money for highway construction upon a short piece of road, under such circumstances that there would not be enough money left to complete the work authorized by the voters when they approved the bond issue. It was held that such action by the board was unlawful and would be restrained by the courts.

In *Peery* v. *Los Angeles*, 187 Cal. 753 [203 Pac. 992, 19 A. L. R. 1044], the city sought to sell the bonds at less than their par value, in contravention of the statute.

In *Skinner* v. *City of Santa Rosa*, 107 Cal. 464 [40 Pac. 742, 29 L. R. A. 512], the council, being unable to sell its bonds under the terms fixed in the ordinance calling the election, and in the proposition submitted to the voters, passed an ordinance by which the place of payment was changed from Santa Rosa to New York; by which the interest was made payable semiannually instead of annually; and by which the interest was made payable in gold coin rather than in lawful money. It was held the council was without such authority, and that bonds issued pursuant to the new ordinance would be void, because the burden upon the taxpayers would be increased.

In *City of San Diego* v. *Millan*, 127 Cal. App. 521 [16 Pac. (2d) 357], cited by respondent, a writ was sought to compel the city treasurer to invest surplus city funds in certain city bonds, known as El Capitan dam bonds. The treasurer refused to make the investment, claiming the bonds were void. It is interesting to note that the questions raised were in part the same as in *Skinner* v. *Santa Rosa, supra, O'Farrell* v. *County of Sonoma, supra, Peery* v. *Los Angeles, supra,* and

*Murphy* v. *City of San Luis Obispo, infra.* In effect, the decision overrules *Skinner* v. *Santa Rosa* and *O'Farrell* v. *County of Sonoma, supra,* in that it approved the validity of the bonds where the proceeds were not to be used for the precise purpose for which the bonds were originally issued. The decision reconciled its holdings with previous cases in stating that the true purpose was the same,—namely, the building of a dam to impound the waters of the San Diego River; that a new and different dam was to be built, it was true, but it was to be built for the same purpose, and its cost would not exceed the original estimate. It reiterated the true rule, that unless the defect complained of would result in an increased burden on the taxpayers, it would be disregarded. It also cited with approval the case of *Town of Martinez* v. *Johnson,* 201 Cal. 397 [257 Pac. 853]. The writ prayed for was accordingly granted.

 It is contended that the proposition submitted to the electors was not the proposition for the submission of which said election was called. It appears that in enumerating the purposes for which the election was called, section 1 of the ordinance stated that the election was called ''for the purpose of submitting to the qualified electors of said city a proposition of incurring a bonded indebtedness of said city in the sum of $175,000.00, for the purpose of purchasing, at a discount, the bonds and unpaid coupons thereon, of Acquisition and Improvement District No. 2''. In section 4 of said ordinance it is stated that the proposition submitted to the electors was as follows:

''Shall the City of Crescent City incur a bonded indebtedness of $175,000.00 for the purpose of purchasing at a discount the bonds, and unpaid coupons thereon, of Acquisition and Improvement District No. 1, and Acquisition and Improvement District No. 2, as particularly specified in Resolution No. 142 passed and adopted by the City Council of the City of Crescent City on the 26th day of July, 1937.''

It is urged that this ordinance is contradictory in that it calls for submitting a proposition for the purpose of purchasing securities of Acquisition and Improvement District No. 2, while, as stated in another section of said ordinance, which specifies the proposition to be submitted to the electors, that the purpose of incurring the bonded indebtedness was that of purchasing securities of Acquisition and Improvement Dis-

trict No. 1 and Acquisition and Improvement District No. 2. It is pointed out by respondent that the purposes and objects for which the indebtedness is proposed to be incurred are not sufficiently definite to be reasonably understandable. Section 2 of the act under which the proceedings were conducted requires that the ordinance calling the election ''shall recite the objects and purposes for which the indebtedness is proposed to be incurred''. Petitioner points out that the preamble of the ordinance correctly stated the amount of the outstanding bonds of each district which it was proposed to acquire, and that therefore no elector could possibly be misled under such circumstances. A reading of the ordinance which fully sets forth the details with reference to the bonds to be paid off in connection with both of these districts, leads us to conclude that no elector could have been prejudiced or deceived by reason of the situation urged by respondent, and we therefore hold that this objection is untenable. The cases cited by respondent do not support this contention. The case of *City of Los Angeles* v. *Hance*, 130 Cal. 278 [62 Pac. 484], is not in point, since the difficulty there lay in the fact that there were two propositions to be submitted to the electors; that they were exactly reversed upon the ballots, and it could not be ascertained which proposition the electors intended to adopt. In the case at bar, the proposition as stated on the ballot clearly indicated to the voters that they were voting to issue bonds to retire the old bonds of both acquisition and improvement districts.

In the *City of San Luis Obispo* v. *Fitzgerald*, 126 Cal. 279 [58 Pac. 699], the ballots furnished the voters failed to indicate that the voter had any choice other than to vote ''yes'' on the question of issuing bonds. Under these circumstances the election was held void.

In *Murphy* v. *San Luis Obispo*, 119 Cal. 624 [51 Pac. 1085, 39 L. R. A. 444], the only point decided as against the validity of the bonds related to the form of the ballot. It overruled *Skinner* v. *Santa Rosa, supra,* on the question of payment of interest and of payment in gold coin. It is significant that in the case at bar none of these questions are involved.

In *City of Inglewood* v. *Kew*, 21 Cal. App. 611 [132 Pac. 780], respondent clerk refused to sign bonds because he claimed certain rejected ballots should have been counted, and because the ordinance calling the election was indefinite

as to what street improvement work was actually to be done, and what amount of money was to be spent by the city. The ordinance itself provided that it was to depend on what objections might thereafter be made by property owners; and on what action might be taken by incoming officers, and that in fact it might even be that no work at all would be undertaken. Under these circumstances, the court held the ordinance to be too indefinite, and therefore void.

It is next contended that the ordinance calling the election was not adopted at a meeting of the city council subsequent to the meeting of the city council at which the resolution of public interest and necessity was passed and adopted. The latter resolution was adopted on July 26, 1937. The record shows that the ordinance calling the election was *read* at the same meeting, but that it was not *adopted* until August 2, 1937. The Bond Act of 1901 provides that the ordinance calling the election must be adopted at a meeting subsequent to the meeting at which the resolution of public interest and necessity was adopted. The method pursued here literally complies with the provisions of the statute mentioned. While it is true that the proceedings relating to the adoption of the ordinance calling the election were *initiated* at the same meeting at which the resolution of public interest and necessity was adopted, it would be a very strange construction for us to hold that the legislature did not mean what it said, and that when it used the word "adopted", it referred to the *initiation* of all proceedings relating to adoption. The point is without merit.

Respondent cites *Hellman* v. *Los Angeles,* 147 Cal. 653 [82 Pac. 313], and *Jenkins* v. *Williams,* 14 Cal. App. 89–96 [111 Pac. 116], in support of his contentions. Neither case is in point. In the Hellman case there was no intrinsic evidence from which the true date of the bonds could be ascertained. That, as mentioned in petitioner's opening memorandum, was a suit to invalidate a tax levy, and nothing contained in the tax roll or assessment roll correctly indicated the date of the bonds.

As pointed out above, the proposition as actually submitted to the voters correctly stated the date. The ordinance, as published except in one section, correctly stated the date. Respondent admits the resolution was in fact adopted on the

proper date. How, then, can anyone have been deceived or prejudiced?

In *Jenkins* v. *Williams, supra,* a suit was brought to compel the auditor of Sacramento County to pay petitioners some $500 more than the bond election allowed for the construction of a bridge. It was held that the county might not lawfully exceed the limitation imposed by the will of the voters. It will thus be seen that nothing contained in the two cited cases is pertinent to the case at bar.

■ It is next contended that the ordinance calling the election referred to the resolution of public interest and necessity as having been adopted on the *28th* day of July, 1937, whereas in fact said resolution was adopted July *26th*, 1937. We cannot see how any serious prejudice arose over what was obviously a mere clerical error. It did not tend to increase or change the burden upon the taxpayer, nor could it mislead any elector to his prejudice. The contention is trivial and without merit.

Several other objections are made, but we deem them so inconsequential that no discussion of them is required.

We wish to reiterate that the interpretation and construction we have placed upon these proceedings is based to a considerable extent upon the peculiar wording of the statute of 1937, and upon the further fact that an emergency existed which called for prompt and immediate action in order to relieve the people of an intolerable burden. If any of the objections raised were such as would result in misleading the electors, or placing upon them a burden which they did not understand they were assuming at the time of the election, we would not hesitate to uphold them, but as we have pointed out, such is not the case here.

Let the peremptory writ issue.

Pullen, P. J., and Thompson, J., concurred.