The FIRST NATIONAL BANK AND TRUST COMPANY OF WYOMING, a National Banking Association, as Trustee of the M. Valeria Richardson Trust, Appellant (Plaintiff below),

v.

Clarence A. BRIMMER, Jr., as Attorney General for the State of Wyoming, Appellee (Defendant below).

No. 4125.

Supreme Court of Wyoming.

Jan. 11, 1973.

Carl L. Lathrop, of Lathrop, Lathrop & Uchner, Cheyenne, for appellant.

Clarence A. Brimmer, pro se; Donald L. Painter, Sp. Asst. Atty. Gen., Cheyenne, for appellee.

Before McINTYRE, C. J., and PARKER, McEWAN and GUTHRIE, JJ.

Mr. Justice GUTHRIE delivered the opinion of the court.

This action was brought under the Uniform Declaratory Judgments Act (§§ 1–1049 to 1–1064, inclusive, W.S.1957) by the First National Bank and Trust Company

of Wyoming as trustee of the M. Valeria Richardson Trust.[1]

The complaint seeks a determination that the trustee has authority under the trust agreement to provide scholarships for qualified students to attend Laramie County Community College and further seeks a declaration that an additional member of the scholarship committee created by the trust be appointed from Laramie County Community College.

The issue herein, as framed by appellant, is:

" * * * · Whether or not the Settlor, M. Valeria Richardson, who died on June 15, 1966, intended by said Trust Agreement (dated April 1, 1963) that scholarships be provided for needy students of Cheyenne and Casper Public Schools who desired to attend Laramie County Community College, which was established in 1968. * * * "

The trial court heard this matter on stipulated and admitted facts and denied the relief prayed for. Appellant appeals from that holding.

M. Valeria Richardson established the trust above referred to with the Stock Grower's National Bank of Cheyenne (predecessor of appellant). After her death the income from this trust was to be used to provide scholarships for needy students of the Cheyenne and Casper public high schools, subject to the provisions of the agreement. Upon Miss Richardson's death the trustee received the bulk of her probate estate. Insofar as it is material to this matter, the trust agreement is as follows:

"1. The net income thereafter received shall be used to provide scholarships to the University of Wyoming and the Casper Community College or their successors. Such scholarships are to be awarded to students at either of the two before mentioned institutions who have graduated from the Public High Schools of Cheyenne, Wyoming, or ·Casper, Wyoming. Recipients of any scholarship granted hereunder are to be designated on the basis of their individual need, worthiness, ability and aptitude for successfully pursuing a college course of study by the Committee hereinafter named.

"(a) A scholarship may be granted to any one student for only one regular school year at any one time; however, upon annual application and approval of the Committee hereinafter named, one student may be granted scholarships for not to exceed four school years of under-graduate study. A student may be eligible to receive a grant under the terms of this trust during any of his or her four years of under-graduate study whether or not the recipient of a grant hereunder in any previous year.

"(b) Scholarships granted hereunder shall be made in approximately equal amounts to students having graduated from the Cheyenne, Wyoming, and Casper, Wyoming Public High Schools, but may be adjusted from year to year as needs vary between the two cities. There shall not necessarily be an equal division of scholarships between the University of Wyoming and the Casper Community College.

    \*      \*      \*      \*      \*      \*

"2. In the event that either or both institutions named herein should cease to exist, then scholarships shall be granted to any successors to the said institutions or to similar institutions located in the State of Wyoming; if there be no similar institutions located in Wyoming then for scholarships to similar institutions located elsewhere."

The trust agreement further provides for a five-member committee to award these scholarships, being composed of one representative each from the Cheyenne public schools, Casper public schools, the Univer-

---

[1]. This trust is referred to in this manner in both pleadings and briefs. However, the trust instrument recites the name as "The Richardson Family, Education Trust Fund." It will be referred to hereafter as the "Richardson Trust."

sity of Wyoming, Casper Community College, and the trustee.

Laramie County Community College was established on May 21, 1968. The current representatives of the scholarship committee have executed written consents, joining in the prayer of the complaint which asks that the trust agreement be so construed as to permit the grant of scholarships to needy students to attend Laramie County Community College. In support of this construction appellant asserts:

"1. That the general intent and purpose of the Trust Agreement was to provide scholarships for needy students in Cheyenne and Casper to attend institutions of higher education in their respective areas of Wyoming, and was not limited to attendance at only the University of Wyoming and Casper Community College.

"2. The Trustee's request to provide needy students from Cheyenne and Casper with scholarships from said trust funds for attendance at Laramie County Community College did not change or alter the purpose of said Trust, and, under the 'doctrine of deviation', the lower Court should have required the Trustee to issue scholarships to Cheyenne and Casper students who desire to attend said Community College at Cheyenne."

Consideration will be directed first at the general proposition that the purpose of the trust was to provide scholarships for needy students in Cheyenne and Casper to attend institutions of higher learning in these areas and was not limited to the University of Wyoming or Casper Community College. It is to be noted there is no general-purpose statement contained in this trust agreement. In lieu thereof it definitely sets out, however, the following:

"* * * the Trustor desires to establish a trust upon the conditions and for the uses and purposes hereinafter set forth;"

Appellant seeks to justify this change and insists the court has power to do so, citing a statement from Bentley v. Whitney Benefits, 41 Wyo. 11, 281 P. 188, 190, which sets out the rule that such instruments are generally liberally construed to effect the purposes of the donor. It may be observed this is the rule in most jurisdictions.

The words "a liberal construction" import an attitude of the court in construing a contract or statute to effect the intention of the settlor or the legislature if it is not clearly or properly expressed, but such a liberal construction is never a vehicle for actual violence to the thing construed. Mr. Justice Story once referred to this, in Lawrence v. McCalmont, 2 How. 426, 449, 43 U.S. 426, 449, 11 L.Ed. 326 (1844), in about as simple words as can be found when he said:

"* * * By a liberal interpretation we do not mean that the words should be forced out of their natural meaning, but simply that the words should receive a fair and reasonable interpretation, so as to attain the objects for which the instrument is designed and the purposes to which it is applied. * * *"

The case of Crescent City v. Griffin, 31 Cal.App.2d 133, 87 P.2d 414, 416, defines a liberal interpretation of a statute as being such interpretation as is not inconsistent with the language used. It is also noted, 16A C.J.S. Construction, p. 1238, that liberal construction does not require that the words be forced out of their natural meaning.

In construing a trust agreement the intention of the settlor must govern and if possible be ascertained from the trust instrument. Every word is to be given effect if it does not defeat the general purpose, First National Bank and Trust Company of Wyoming v. Finkbiner, Wyo., 416 P.2d 224, 229. There is no evidence which would in any manner assist in the determination of the settlor's intention, and apparently appellant rests upon the asserted contentions that had M. Valeria Richardson been able to foresee prior to or at her death "the existence and establishment of Laramie County Community College, she would have specifically included

under said Trust Agreement that institution to which scholarships would be granted to needy students in Cheyenne and Casper, Wyoming"; and that the trust agreement discloses a general intention on the part of the trustor to confer scholarships upon graduates of Cheyenne and Casper high schools to attend institutes of higher learning in their respective areas or at Wyoming's then and now only four-year institution of higher learning, the University of Wyoming. The settlor and her attorney were both obviously cognizant of the legislature's authorization to form community colleges, as evidenced by her recognition of Casper Community College, which was in operation at that time. It is mere speculation to assert that she might not have anticipated the organization of such college in this community or could not have foreseen it. She did not, however, provide for such contingency. We see no occasion for appellant's suggested construction of this clear instrument and cannot see how it can be so construed in face of the express terms thereof.

Appellant makes no contention that the doctrine of cy pres is applicable, admitting that the purposes and operations of the trust as set out in the instrument may continue to be accomplished, but asserting that this is not applicable to a mere change in the machinery of administration, quoting from Bogert, Trusts and Trustees, ch. 20, § 394, p. 236 (2d Ed.). Appellant relies on the doctrine of deviation. We have found much confusion in opinions setting out the difference in these two doctrines, and there are courts which view this as a modified cy pres rule, Moore v. City and County of Denver, 133 Colo. 190, 292 P.2d 986, 989; Newton v. Healy, 100 Conn. 5, 122 A. 654, 656. We, however, view this difference as a matter of real substance and believe that a fair statement is that the use of the power of deviation is limited to permitting relief which is "necessary or highly desirable in order to enable the trustee to perform the trust," Bogert, supra.

Bogert, supra, ch. 27, § 561, p. 131, calls attention to the fact that courts often require the concurrence of two elements before the doctrine of deviation may be applied, i. e., an unforeseen and unforeseeable change in circumstances, and a frustration of settlor's main objective if the trust conditions are strictly followed. See also IV Scott on Trusts, § 381, p. 2983 (3d Ed.), and Restatement (Second), Trusts 2d, § 381, p. 273 (1959). No showing or suggestion is made that operation of the Richardson Trust would be defeated or substantially impaired if this requested deviation were not approved. The contrary appears.

Appellant relies on In re Farren, 27 Ohio App.2d 31, 272 N.E.2d 162, 164, and Sendak v. Trustees of Purdue University, Ind.App., 279 N.E.2d 840, 844. We find, although the facts are inapplicable, that both of these cases reiterate the necessity that compliance would defeat or substantially impair the accomplishment of the trust as a condition for the exercise of the court's equitable powers.

The effect of the modification which is sought in this trust would be to create a new class of beneficiary, i. e., needy students from Cheyenne and Casper high schools who desire to attend Laramie County Community College. Of particular interest is the case of Hinkley Home Corporation v. Bracken, 21 Conn.Sup. 222, 152 A.2d 325, 327, which styles the doctrine of cy pres as that of approximation. Because their facilities exceeded the present needs the trustees in that case sought to expand the clause which limited care to indigent residents of New London over the age of 65 to include those who had been but were no longer residents. In denying such application the court quoted its Supreme Court of Errors in saying:

" * * * 'The modified doctrine of *cy pres* or of approximation, which we have adopted, arises out of and is limited by the necessities of the particular case, and it exists only when and in so far as, the specific method adopted by the testator

for carrying his general intent into effect can no longer be executed.' [Citing case.] * * * "

See also the companion case of Bacon Memorial Home v. Bracken, 21 Conn.Sup. 217, 152 A.2d 518. The case of Moore v. City and County of Denver, supra, is a case seeking modification of a trust providing for the care of a described class of orphans. Because of a large increase in the funds available for this purpose and a limited number in the class described in the instrument, the trustees applied to expand this class, which application was denied by the court. There is no evidence or indeed any contention that there is any emergency or that this trust cannot continue operations in its present form without serious detriment. We have found no authority which authorizes a court to make any such change merely deemed desirable.

■ The clearly expressed intention of the settlor should be zealously guarded by the courts, particularly when the trust instrument reveals a careful and painstaking expression of the use and purposes to which the settlor's financial accumulations shall be devoted. A settlor must have assurance that his solemn arrangements and instructions will not be subject to the whim or suggested expediency of others after his death.

Affirmed.

Mr. Justice McEWAN (concurring).

I approve of all that is said in the majority opinion and concur in the result based upon the admitted facts. I do, however, want to point out we do not hold that that which the plaintiff seeks to accomplish cannot be further considered upon different facts. As an example, the trust agreement provided:

"* * * Scholarships granted hereunder shall be made in approximately equal amounts to students having graduated from the Cheyenne, Wyoming, and Casper, Wyoming Public High Schools, * * * "

The plaintiff did not show or contend before the trial court that unless Laramie County Community College was approved as an additional school it would be impossible to carry out the terms of this portion of the trust agreement. Our opinion this day decides only that the contentions of the plaintiff, based upon the circumstances then present, did not constitute sufficient cause to amend, modify or change the provisions of the trust agreement so as to provide scholarships for qualified students to attend Laramie County Community College. I am not suggesting whether such change in circumstances would or would not constitute sufficient grounds for changing the terms of the trust agreement, but merely point out that some questions remain undecided.